**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MARTA SHUMYLO, INDIVIDUALLY, | § | |
| AND A.K., a minor (DECEASED), BY AND | § | |
| THROUGH HEIR, MARTA SHUMYLO, | § | |
| NATALIIA NIKITSKA, INDIVIDUALLY, | § | |
| AND D.N., a minor (DECEASED), BY AND | § | Civil Action No. 3:25-CV-3400-D |
| THROUGH HEIR NATALIIA NIKITSKA, | § | |
| VALENTINA TSVITOK, INDIVIDUALLY, | § | (Consolidated for Pretrial Purposes Only |
| AND T.T., a minor (DECEASED), BY AND | § | With Civil Action Nos. 3:25-CV-3402-D; |
| THROUGH HEIR, VALENTINA TSVITOK, | § | 3:25-CV-3403-D; 3:25-CV-3406-D; and |
| | § | 3:25-CV-3416-D) |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS INSTRUMENTS, INC., | § | |
| ADVANCED MICRO DEVICES, INC., | § | |
| INTEL CORPORATION, MOUSER | § | |
| ELECTRONICS, INC., and DOES 1-100, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>Plaintiffs' Opposition Brief to Defendants' Motion to Dismiss</u>**

**Table of Contents**

Introduction.................................................................................................................. 1

Background ................................................................................................................... 2

    A.  Defendants Manufacture and Supply Semiconductors Critical to Weapons Systems ........ 2

    B.  Plaintiffs Suffer Bodily Injury and Death from Weapons Powered With Defendants' Semiconductor Components ................................................................................... 3

    C.  Plaintiffs File Lawsuits for Damages Under Texas State Tort Law ................................... 5

Legal Standard ............................................................................................................. 5

Argument ...................................................................................................................... 6

    I.  Plaintiffs' State Law Claims Are Not Preempted by Federal Law ................................... 6

        A.  Defendants' Preemption Argument Ignores the Plain Language of the Relevant Regulations that Expressly Permits Plaintiffs' Claims ................................. 7

        B.  Defendants' Preemption Arguments Are Wrong Regardless ....................................... 9

            1.  Field Preemption Does Not Apply ............................................................... 9

            2.  Conflict Preemption Does Not Apply .................................................... 13

    II.  Plaintiffs Have Plausibly Alleged Facts Sufficient To State a Claim for Each Alleged Cause of Action ....................................................................................... 17

        A.  Plaintiffs Have Plausibly Alleged Causation ............................................................ 17

            1.  Plaintiffs' Allegations on Causation are Sufficiently Specific ............................. 17

            2.  Defendants' Factual Arguments Are For the Jury ................................................. 19

        B.  Plaintiffs' Claims Do Not Depend on a Private Right of Action in Export Laws....... 20

        C.  Plaintiffs Have Plausibly Alleged that Defendants Owed a Duty of Care.................. 22

            1.  Defendants Owe Plaintiffs a Common Law Duty of Care.................................... 23

            2.  Plaintiffs Do Not Seek To Impose a Duty To Control Russia.............................. 25

            3.  Federal and Texas Law and Policy Support and Inform Defendants' Common Law Duty of Care.............................................................................. 26

        D.  Plaintiffs' Claims Are Factually and Legally Sufficient ............................................. 27

        E.  Plaintiffs' Claims Are Not Time-Barred ................................................................. 31

            1.  The Statute of Limitations Should Be Tolled Based on the War .......................... 32

            2.  Plaintiffs' Claims Did Not Accrue Until September 2024 ................................... 33

            3.  Fraudulent Concealment Precludes Defendants' Time-Bar Defense.................... 35

Conclusion .................................................................................................................. 35

## Table of Authorities

**Cases**

*Aldridge v. Miss. Dep't of Corr.*,
990 F.3d 868 (5th Cir. 2021) ........................................................................................................9

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ........................................................................................................................6

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) ....................................................................................................................11

*Am. Precision Ammunition, LLC v. City of Mineral Wells*,
90 F.4th 820 (5th Cir. 2024) .......................................................................................................34

*Arizona v. United States*,
567 U.S. 387 (2012) ...............................................................................................................13, 16

*Armstrong v. Sw. Airlines Co.*,
No. 3:20-cv-3610, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021).............................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................................6

*Aus. Nursing Ctr., Inc. v. Lovato*,
171 S.W.3d 845 (Tex. 2005) .......................................................................................................31

*Barrosse v. Huntington Ingalls, Inc.*,
70 F.4th 315 (5th Cir. 2023) .......................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................6, 17

*Berry v. Lee*,
428 F. Supp. 2d 546 (N.D. Tex. 2006) .......................................................................................12

*BKL Holdings, Inc. v. Globe Life Inc.*,
660 F. Supp. 3d 602 (E.D. Tex. 2023).........................................................................................32

*BMW of N. Am., LLC v. Gunn*,
No. 05-17-00600-cv, 2018 WL 3342693 (Tex. App. July 9, 2018) ............................................31

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
572 S.W.3d 213 (Tex. 2019) .......................................................................................................29

*Brighthouse Life Ins. Co. v. Daboub*,
 577 F. Supp. 3d 504 (N.D. Tex. 2021) .................................................................................22

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*,
 317 S.W.3d 361 (Tex. App. 2010) .......................................................................................35

*Bryant v. CIT Group/Consumer Fin.*,
 No. 16-cv-1840, 2018 WL 1740075 (S.D. Tex. Apr. 11, 2018) ..........................................21

*Buckman Co. v. Plaintiffs' Legal Committee*,
 531 U.S. 341 (2001) .............................................................................................................16

*Cass v. Stephens*,
 156 S.W.3d 38 (Tex. App. 2004) .........................................................................................35

*Centennial Bank v. Holmes*,
 717 F. Supp. 3d 542 (N.D. Tex. 2024) .................................................................................19

*Chamber of Com. of U.S. v. Whiting*,
 563 U.S. 582 (2011) ..........................................................................................................9, 14

*City of El Cenizo v. Texas*,
 890 F.3d 164 (5th Cir. 2018) ...........................................................................................11, 12

*Coleman v. Alcolac, Inc.*,
 888 F. Supp. 1388 (S.D. Tex. 1995) ....................................................................................13

*Cox v. Robison*,
 105 Tex. 426 (1912) .............................................................................................................32

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000) .........................................................................................................10, 16

*Diggles v. Horwitz*,
 765 S.W.2d 839 (Tex. App. 1989) .......................................................................................26

*Doe v. City View Indep. Sch. Dist.*,
 736 F. Supp. 3d 459 (N.D. Tex. 2024) .................................................................................33

*Doe v. Exxon Mobil Corp.*,
 69 F. Supp. 3d 75 (D.D.C. 2014) .........................................................................................11

*Drake v. Consumers Cnty. Mut. Ins.*,
 No. 05-13-00170-cv, 2015 WL 2182682 (Tex. App. May 8, 2015) .....................................33

*Dunbar v. Seger-Thomschitz,*
    615 F.3d 574 (5th Cir. 2010) ................................................................................11

*El Chico Corp. v. Poole,*
    732 S.W.2d 306 (Tex. 1987) ................................................................................25

*Eli Lilly & Co. v. Revive Rx, LLC,*
    812 F. Supp. 3d 708 (S.D. Tex. 2025) ................................................................21

*Eng. v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) ..........................................................................................12, 17

*Est. of Miranda v. Navistar, Inc.,*
    23 F.4th 500 (5th Cir. 2022) ...............................................................................14

*FDIC v. Canfield,*
    967 F.2d 443 (10th Cir. 1992) ...............................................................................8

*FDIC v. McSweeney,*
    976 F.2d 532 (9th Cir. 1992) .................................................................................8

*FDIC v. Williams,*
    779 F. Supp. 63 (N.D. Tex. 1991) .........................................................................8

*Fed. Express Corp. v. U.S. Dep't of Com.,*
    39 F.4th 756 (D.C. Cir. 2022) .............................................................................11

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982) ...............................................................................................7

*Flagg v. Stryker Corp.,*
    647 F. App'x 314 (5th Cir. 2016) ........................................................................18

*Geier v. Am. Honda Motor Co.,*
    529 U.S. 861 (2000) .............................................................................................16

*GH Am. Energy LLC v. Vegas,*
    No. 1:24-cv-648, 2025 WL 3090027 (W.D. Tex. Sept. 16, 2025) .......................10

*Goodner v. Hyundai Motor Co.,*
    650 F.3d 1034 (5th Cir. 2011) .............................................................................20

*Greater Hou. Transp. Co. v. Phillips,*
    801 S.W.2d 523 (Tex. 1990) ................................................................................23

iv

*Grigsby v. Peak*,
  57 Tex. 142 (1882) ...................................................................................................32

*Harris v. BMW of N.Am., LLC*,
  No. 4:19-cv-00016, 2020 WL 7074878 (E.D. Tex. Dec. 3, 2020) .........................................35

*Harrison v. Medtronic, Inc.*,
  No. 22-10201, 2022 WL 17443711 (5th Cir. Dec. 6, 2022) .......................................18

*Hines v. Davidowitz*,
  312 U.S. 52 (1942) ...................................................................................................13

*Hodges v. Delta Airlines, Inc.*,
  44 F.3d 334 (5th Cir. 1995) ......................................................................................13

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
  892 F.3d 719 (5th Cir. 2018) ....................................................................................19

*In Re Depuy Orthopaedics, Inc.*,
  888 F.3d 753 (5th Cir. 2018) ....................................................................................33

*In re D.K.M.*,
  242 S.W.3d 863 (Tex. App. 2007) ............................................................................32

*In re Nat'l Prescription Opiate Litig.*,
  477 F. Supp. 3d 613 (N.D. Ohio 2020) ......................................................................2

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
  712 F.3d 185 (5th Cir. 2013) ....................................................................................14

*J.K. & Susie L. Wadley Rsch. Inst. & Blood Bank v. Beeson*,
  835 S.W.2d 689 (Tex. App. 1992) ............................................................................20

*Kansas v. Garcia*,
  589 U.S. 191 (2020) ...........................................................................................14, 16

*LaFleur v. Astrodome-Astrohall Stadium Corp.*,
  751 S.W.2d 563 (Tex. App. 1988) ............................................................................25

*Lopez-Juarez v. Kelly*,
  348 S.W.3d 10 (Tex. App. 2011) ..............................................................................28

*Lowe v. Gen. Motors Corp.*,
  624 F.2d 1373 (5th Cir. 1980) ..................................................................................21

*Lozano v. Baylor Univ.*,
    408 F. Supp. 3d 861 (W.D. Tex. 2019)..................................................................................27

*Madeira v. Affordable Hous. Found., Inc.*,
    469 F.3d 219 (2d Cir. 2006) ................................................................................................17

*Marcus & Millichap Real Estate Inv. Servs. of Nev., Inc. v. Triex Texas Holdings, LLC*,
    659 S.W.3d 456 (Tex. 2023) ...............................................................................................33

*Marlin v. Moody Nat'l. Bank, N.A.*,
    No. H-04-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006)...........................................26

*Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*,
    555 F.3d 806 (9th Cir. 2009) ..............................................................................................12

*Martin v. Ruredy 808, LLC*,
    No. 3:20-cv-264, 2023 WL 1868191 (N.D. Miss. Feb. 9, 2023)..........................................19

*Martinez v. Walgreen Co.*,
    935 F.3d 396 (5th Cir. 2019) ..............................................................................................22

*Martone v. Livingston*,
    No. 4:13-cv-3369, 2015 WL 9259089 (S.D. Tex. Dec. 18, 2015) ........................................31

*Mayor & City Council of Balt. v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022)...............................................................................................11

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996).............................................................................................................12

*Mellon Mortg. Co. v. Holder*,
    5 S.W.3d 654 (Tex. 1999) ....................................................................................................23

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)...............................................................................................................8

*Morin v. Moore*,
    309 F.3d 316 (5th Cir. 2002)..........................................................................................23, 25

*Morris v. Dearborne*,
    181 F.3d 657 (5th Cir. 1999)...............................................................................................19

*Mortberg v. Litton Loan Servicing, LP*,
    No. 4:10-cv-668, 2011 WL 4431946 (E.D. Tex. Aug. 30, 2011)...........................................26

*Moseley v. Lee*,
37 Tex. 479 (1873) ...................................................................................................32

*Motloch v. Albuquerque Tortilla Co., Inc.*,
454 S.W.3d 30 (Tex. App. 2014) ............................................................................30

*Movsesian v. Victoria Versicherung AG*,
670 F.3d 1067 (9th Cir. 2012) .................................................................................11

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) .................................................................................................15

*Nat'l Foreign Trade Council v. Natsios*,
181 F.3d 38 (1st Cir. 1999) .....................................................................................11

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ...................................................................................................6

*Nettles v. GTECH Corp.*,
606 S.W.3d 726 (Tex. 2020) ...................................................................................28

*Nixon v. Mr. Prop. Mgmt. Co.*,
690 S.W.2d 546 (Tex. 1985) ...................................................................................23

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991) ...................................................................................................8

*Otis Eng'g Corp. v. Clark*,
668 S.W.2d 307 (Tex. 1983) ...................................................................................27

*Pagayon v. Exxon Mobil Corp.*,
536 S.W.3d 499 (Tex. 2017) ...................................................................................25

*Palsgraf v. Long Island R.R.*,
162 N.E. 99 (N.Y. 1928) .........................................................................................23

*Peek v. Oshman's Sporting Goods, Inc.*,
768 S.W.2d 841 (Tex. App. 1989)...........................................................................26

*Perry v. S.N.*,
973 S.W.2d 301 (Tex. 1998) .............................................................................21, 22

*PLIVA, Inc. v. Mensing*,
564 U.S. 604 (2011) ...................................................................................................6

*Reyes v. Dollar Tree Stores, Inc.*,
    221 F. Supp. 3d 817 (W.D. Tex. 2016)................................................................25, 26

*Robert R. Walker, Inc. v. Burgdorf*,
    244 S.W.2d 506 (Tex. 1951) ...............................................................................23

*Rodriguez v. Xerox Bus. Servs., LLC*,
    No. 16-cv-00041, 2017 WL 3023213 (W.D. Tex. Mar. 27, 2017) ...........................18

*Rusk v. Sandoz Inc.*,
    No. 14-cv-00549, 2016 WL 11782888 (W.D. Tex. July 28, 2016)..........................19

*Schydlower v. Pan Am. Life Ins. Co.*,
    231 F.R.D. 493 (W.D. Tex. 2005) .........................................................................11

*Sekhar v. United States*,
    570 U.S. 729 (2013).............................................................................................8

*Sickels v. Epps*,
    8 S.W. 124 (Tex. 1888) .......................................................................................32

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984).......................................................................................12, 17

*Soc'y of Separationists, Inc. v. Herman*,
    959 F.2d 1283 (5th Cir. 1992)..............................................................................33

*Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*,
    237 S.W.3d 379 (Tex. App. 2007).........................................................................29

*St. Joseph Hosp. v. Wolff*,
    94 S.W.3d 513 (Tex. 2002) ..................................................................................30

*Sweet Jan Joint Venture v. FDIC*,
    809 F. Supp. 1253 (N.D. Tex. 1992) .....................................................................15

*Tafflin v. Levitt*,
    493 U.S. 455 (1990).............................................................................................6

*Texas Midstream Gas Servs., LLC v. City of Grand Prairie*,
    No. 3:08-cv-1724, 2008 WL 5000038 (N.D. Tex. Nov. 25, 2008) ...........................6

*Todok v. Union State Bank of Harvard, Neb.*,
    281 U.S. 449 (1930).............................................................................................10

*United States v. Curtiss-Wright Exp. Corp.*,
  299 U.S. 304 (1936)..................................................................................................10

*United States v. Texas*,
  97 F.4th 268 (5th Cir. 2024).......................................................................................9

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
  336 F.3d 375 (5th Cir. 2003).....................................................................................29

*Va. Uranium, Inc. v. Warren*,
  587 U.S. 761 (2019)....................................................................................................7

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*,
  No. 21-cv-981, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022) .................................22

*Williams v. Wal-Mart Stores Texas LLC*,
  No. 4:24-cv-00583, 2024 WL 4668556 (N.D. Tex. Nov. 4, 2024) ..........................18

*Wis. Dep't of Indus., Lab. & Hum. Relations v. Gould Inc.*,
  475 U.S. 282 (1986)..................................................................................................16

*Wyeth v. Levine*,
  555 U.S. 555 (2009)..................................................................................................14

*Zschernig v. Miller*,
  389 U.S. 429 (1968)..................................................................................................10

*Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*,
  134 F.4th 326 (5th Cir. 2025).................................................................................6, 14

**Statutes, Regulations, and Rules**

Conn. Gen. Stat. §§ 21a-243 ..............................................................................................14

Fed. R. Civ. P. 8..................................................................................................................5

Ky. Rev. Stat. § 222.429 .....................................................................................................14

Mich. Comp. Laws § 333.7204...........................................................................................14

Mich. Comp. Laws § 333.7403...........................................................................................14

N.M. Stat. § 30-7-7.1 ..........................................................................................................14

Nev. Rev. Stat. § 193.340....................................................................................................14

Tenn. Code § 39-17-1316 ...............................................................................................14

Tex. Civ. Prac. & Rem. Code § 71.021 ..........................................................................31

50 U.S.C. § 4811 ...............................................................................................1, 15, 21

50 U.S.C. § 4819 .................................................................................................................7

15 C.F.R. § 734.2 ................................................................................................................8

15 C.F.R. § 734.12 .............................................................................................................8

15 C.F.R. § 730.6 .........................................................................................................21, 24

15 C.F.R. § 764.3 ........................................................................................................1, 7, 8

31 C.F.R. § 560.701 .....................................................................................................1, 7

## Other Authorities

Budapest Memorandum on Security Assurances in Connection with Ukraine's
   Accession to the Treaty on the Non-Proliferation of Nuclear Weapons,
   Dec. 5, 1994, 3007 U.N.T.S. 3 .................................................................................24

Constitutionality of S. Afr. Divestment Statutes Enacted by State & Loc. Governments,
   10 U.S. Op. Off. Legal Counsel 49, 61 (1986) .........................................................10

O'Connors Texas Causes of Action Ch. 36-A § 1 (2026 ed.) .......................................28

PJC 2.1 .................................................................................................................13, 20, 22

PJC 5.1 .................................................................................................................20, 22, 28

PJC 10.11 .............................................................................................................................30

Restatement (Third) of Torts § 14 (2010) .......................................................................14

**Introduction**

Plaintiffs are Ukrainian civilians who allege that they were injured or killed in Russian missile and drone attacks powered with technology produced and supplied by the Defendants. Throughout the war in Ukraine, Defendants' technology—semiconductor components used to guide, navigate, and control missiles and drones—has been found in wreckage from attacks across Ukraine. Plaintiffs allege that Defendants breached standard duties of care by supplying those components despite well-known risks of diversion and misuse and that Defendants' violations of federal export regulations establish, at minimum, breaches of applicable standards of care. This case is not an attempt to enforce export laws themselves, but export laws do inform what a "person of ordinary prudence" would do under basic negligence principles. Plaintiffs' claims are not preempted by federal export regulations, which plainly recognize that violators may be held liable based on "other applicable laws." 31 C.F.R. § 560.701; *see also* 15 C.F.R. § 764.3 (similar).

The harm suffered by Ukrainians from Defendants' semiconductor components being used in Russian missiles and Iranian drones has been long foreseeable. Since at least the 1960s, semiconductor manufacturers have recognized the importance of their technology to national security, and since that time the United States has regulated semiconductor exports "to control the release of items for use in…acts of terrorism" and "to carry out the foreign policy of the United States, including the protection of human rights and the promotion of democracy." 50 U.S.C. § 4811. These regulatory regimes are designed to benefit American citizens and their allies, especially Ukrainian citizens who gave up their nuclear protections against Russian invasion in exchange for these types of security assurances. Ukrainian civilians—particularly in the context of an ongoing armed conflict—were therefore foreseeable victims of the very conduct alleged.

Plaintiffs have satisfied the requirement to provide a "short and plain" statement to survive dismissal under Rule 12. On causation, Plaintiffs have alleged that Defendants' semiconductor components were found in the missiles and drones used in the attacks. On duty, Plaintiffs have alleged facts supporting the factors relevant to holding that Defendants owed a common-law duty. More broadly, the plausibility of Plaintiffs' claims is evident from comparing the elements required

1

under pattern jury instructions for each count to the facts alleged in each complaint. And Plaintiffs'

allegations that Defendants empowered Russian attacks that placed the Ukrainian citizens in a state

of siege and war zone equitably tolls any statutes of limitations under traditional notions of fairness

and justice recognized by Texas courts, which raise fact issues to be resolved by a jury, not a court

on a Rule 12 motion. Nothing about Plaintiffs' allegations is unprecedented: tort law routinely

holds defendants liable for foreseeable harm to foreseeable plaintiffs, whether the misconduct is

as simple as a dog bite or as complex as fueling opioid addiction by ignoring red flags about end-

users. *See In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613, 631 (N.D. Ohio 2020)

(denying motion to dismiss raising preemption and lack of common law duty arguments because

"the Court concludes the Pharmacy Defendants have failed to meet their burden of demonstrating

there is no corporate-level obligation to design and implement systems, policies, or procedures to

identify red flag prescriptions."). For these reasons, Defendants' motion to dismiss fails.

## **Background**

### A.    **Defendants Manufacture and Supply Semiconductors Critical to Weapons Systems**

Defendants Texas Instruments, Inc , Advanced Micro Devices, Inc., and Intel Corporation

("Manufacturing Defendants") and Mouser Electronics, Inc. ("Supplier Defendant") (collectively,

"Defendants") manufacture and supply semiconductors, including microchips, processors, and

programmable devices that are critical parts in weapons systems. Compl. ¶ 6.[1] Semiconductor

components, which are sometimes more casually described as "microchips," provide "advanced

guidance, navigation, and control systems," *id.* ¶ 135, that are integral to weapons because they

enable users "to remotely pilot [] drones and missiles to targeted locations," *id.* ¶ 140.

Defendants' semiconductor components are integral to the weapons used in attacking

civilians. Among other weapons systems, these weapons include the Kh-101, a "long-range, air-

launched cruise missile, used for precision strikes deep inside Ukrainian territory," *id.* ¶ 143; the

Shahed-131 and Shahed-136 Iranian kamikaze-style drones used for "long-range strike[s]," *id.*

¶ 144; and the Iskander-M, a "hypersonic missile" capable of carrying a "conventional or nuclear-

---

[1] Unless stated otherwise, all references to the Complaint refer to the *Shumylo* Complaint.

capable warhead[]" with or without "cluster munitions" used to inflict "indiscriminate damage and significant civilian casualties," *id.* ¶ 145. These "missiles could not find their targets without key components supplied by American semiconductor companies." *Id.* ¶ 173.

Defendants are the premier and primary source for the critical semiconductor components used in these weapons. While some weapons are completely destroyed in attacks on Ukraine, Ukrainian authorities have investigated the attacks and found nearly 2,500 foreign components in the weapons used to attack Ukraine. An overwhelming portion of those parts are from U.S. manufacturers, *id.* ¶ 143 & n.51, and the top producers of those parts include Defendants Intel, Texas Instruments, and AMD, *id.* ¶ 151. These factual findings are supported by studies from Ukrainian authorities, *id.* ¶ 143 & n.51, academic institutions, *id.* ¶ 151, the Royal United Services Institute ("RUSI"), *id.* ¶ 157, Conflict Armament Research ("CAR"), *id.* ¶ 161, international media, *id.* ¶ 162, and the U.S. Senate Permanent Subcommittee on Investigations, *id.* ¶ 164.

Worse yet, and despite ample notice about how Defendants' products are being used, *id.* ¶ 168 (listing 20 pages of sources providing notice), the flow of semiconductor components into Russia and Iran from Defendants has not decreased since the start of the war in Ukraine. When testifying before the U.S. Senate Subcommittee, CAR's deputy director of operations testified that "analyses of downed Russian weapons have showed an increasing percentage of U.S.-manufactured semiconductors produced after Russia's invasion of Ukraine, indicating that Russia has been able to acquire newly manufactured semiconductors…" *Id.* ¶ 165; *see also* ¶ 177 ($4 million of Texas Instruments products obtained by Russia through a single distributor in 2024).

**B.    Plaintiffs Suffer Bodily Injury and Death from Weapons Powered With Defendants' Semiconductor Components**

Plaintiffs are Ukrainian civilians who were killed or injured in five horrific attacks including the playground attack (*Shumylo*), the home attack (*Zaplyvanyi*), the warehouse attack (*Babich*), the children's hospital attack (*Dmytrivna*), and the school dormitory attack (*Terschenko*). The death, bodily injury, emotional suffering, and property loss from these attacks are catastrophic.

**The Playground Attack (*Shumylo*).** This attack occurred in April 2025 when Iskander-M ballistic missiles struck a playground and surrounding residential buildings in Kryvyi Rih. At least 19 people were killed, 74 people were injured, and around 44 buildings were destroyed. *Shumylo* Compl. ¶ 184. There are six plaintiffs from this attack, including a slain teenage couple whose parents found the boy with a hole in his chest and the girl with horrific leg trauma. *Id.* ¶ 188.

**The Home Attack (*Zaplyvanyi*).** This attack occurred in April 2023 when Kh-101 cruise missiles hit a residential building, killing families in their sleep. This attack killed at least 23 people, including 6 children. There are eleven plaintiffs from this attack, including two women who lost their mothers and one mother who lost her daughter. *Zaplyvanyi* Compl. ¶ 189.

**The Warehouse Attack (*Babich*).** This attack occurred in June 2023 when Kh-101 cruise missiles struck residential buildings, industrial buildings, and a bottled water warehouse, which was used to provide clean water to many people in the region after a major dam was destroyed in another attack. At least 10 people were killed in the warehouse, including a 17-year-old boy, and multiple floors in a residential building were destroyed. *Babich* Compl. ¶ 185. There are nine plaintiffs from this attack, including a 21-year-old man who was the provider for his family and another young man who worked alongside his father at the warehouse and was forced to identify his father's almost-entirely-burned-body from the carnage of this attack. *Id.* ¶¶ 188, 192.

**The Children's Hospital Attack (*Dmytrivna*).** This attack occurred in July 2024 when a Kh-101 missile struck the primary pediatric hospital in Kyiv. More than 50 people were injured in this attack, including 10 children, with 4 children requiring hospitalization for their injuries. *Dmytrivna* Compl. ¶ 183. The attack damaged five hospital units, including the intensive care unit and the largest oncology and hematology lab in Ukraine. There are six plaintiffs from this attack, including a doctor who was pinned down when the ceiling fell on top of her and a nurse who was wheelchair bound for months after the attack and can no longer walk normally. *Id.* ¶¶ 185–89.

**The School Dormitory Attack (*Terschenko*).** This attack occurred in March 2023 when Shahed-131 and Shahed-136 drones struck residential buildings and dormitories in Rzhyshchiv. At least 9 people were killed, 29 were injured, and a school and two adjacent dormitories were

significantly destroyed. *Terschenko* Compl. ¶ 187. There are thirteen plaintiffs from this attack, including a woman whose husband was killed in the attack and her son who was pinned under the wreckage and lost his ability to move his hand, despite extensive rehab. *Id.* ¶¶ 192–94.

**C.      Plaintiffs File Lawsuits for Damages Under Texas State Tort Law**

On December 10, 2025, Plaintiffs filed five lawsuits—each with over 100 pages of allegations—in Texas state court against Defendants to recover for the death, suffering, and property damages caused by the "illicit flood of semiconductors into Russia," which "is enabled by the knowing neglect or willful ignorance of American companies" that "borders on intentional disregard." Compl. ¶ 9. As Senator Blumenthal explained in the September 2024 U.S. Senate Subcommittee investigation that exposed Defendants' wrongful conduct, "[e]very day, millions of dollars are made by manufacturers and distributors from chips like the ones that run Kh-101 missile and other Russian weapons" because "American technology is still fueling Russia's murderous war against Ukraine." *Id.* Plaintiffs' claims are premised on state tort law and include counts for negligence, negligence *per se*, wrongful death, and survival, among other claims. *Id.* ¶¶ 209–76.

On December 11, Defendant Mouser snap removed the cases to federal court before the summons were even issued in state court, ECF 1, and the other Defendants later consented to removal, ECF 14. On December 18, Mouser amended the notice of removal to include removal based on federal question because "these claims are most appropriately resolved in a federal forum," ECF 6 at ¶ 23, and Defendants doubled down on the appropriateness of a federal forum in their remand opposition, ECF 28 at 23. On February 18, Plaintiffs withdrew their remand motion, agreeing that this Court has jurisdiction and that a federal forum was appropriate. ECF 38. On March 20, Defendants moved to dismiss, arguing that the case was nonjusticiable as preempted and that the 100-page long complaints did not plead plausible causes of action. ECF 50 ("Mot.").

<u>**Legal Standard**</u>

To survive a motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Court should deny a motion to dismiss when the plaintiff states "a claim to relief that is plausible on its face."

5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But at the motion to dismiss stage, courts "must assume the well-pleaded factual allegations in the complaint are true," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" *Twombly*, 550 U.S. at 556 (citation omitted).

<u>Argument</u>

**I.   Plaintiffs' State Law Claims Are Not Preempted by Federal Law**

"States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Preemption only applies "[w]here state and federal law 'directly conflict,'" and where there is a direct conflict, "state law must give way," *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011), but otherwise "States retain their sovereign prerogatives to regulate," *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 328 (5th Cir. 2025). "Federal law may preempt state or local law in three well-established ways. First, Congress may expressly preempt state law by clearly and explicitly articulating its intent to preempt state law in a defined area. Second, even where Congress does not address it, preemption will be implied where federal law occupies a field so pervasively as to naturally exclude state law. Third, state law is preempted to the extent that it conflicts with federal law, precluding simultaneous compliance with both laws, or impeding achievement of the full purposes and objectives of Congress." *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, No. 3:08-cv-1724, 2008 WL 5000038, at *7 (N.D. Tex. Nov. 25, 2008).

Because "the purpose of Congress is the ultimate touchstone' in every pre-emption case," *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008), "evidence of pre-emptive purpose must be sought in the text and structure of the federal provision at issue," *Zyla*, 134 F.4th at 329 (citation omitted). To succeed on preemption under any theory, Defendants "must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law" because

6

"[i]nvoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality) (citation omitted). These same principles apply where, as here, the relevant text is from federal regulations. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

A.      **Defendants' Preemption Argument Ignores the Plain Language of the Relevant Regulations that Expressly Permits Plaintiffs' Claims**

Defendants' preemption arguments fail because they ignore the text of the relevant regulatory provisions, which plainly permit common-law claims such as Plaintiffs. The primarily relevant regulations identified in the Complaints include the Iranian Transactions and Sanctions Regulations (ITSR) and the Export Administration Regulations (EAR), which are statutorily authorized by the Export Control Reform Act of 2018 (ECRA) and the International Emergency Economic Powers Act (IEEPA). Far from including language that displaces or conflicts with state law, these regulations expressly permit state common law claims. This alone dooms Defendants' preemption arguments.

Defendants cannot "point specifically" to any text from the relevant regulations showing that federal law displaces or conflicts with Plaintiffs' common law tort claims. To the contrary, the relevant language of the ECRA itself states that it does not limit "(1) the *availability of other administrative or judicial remedies* with respect to violations of this subchapter, or any regulation, order, license or other authorization issued under this subchapter." 50 U.S.C. § 4819 (emphasis added). The ITSR provides that "[v]iolations of this part may also be subject to relevant provisions of Customs laws and *other applicable laws*." 31 C.F.R. § 560.701 (emphasis added). The relevant language of the EAR provides that "[v]iolations of ECRA, the EAR, or any order, license or authorization issued thereunder are subject to the administrative sanctions described in this section and to any other liability, sanction, or penalty *available under law*." 15 C.F.R. § 764.3 (emphasis added). Those phrases—"other applicable laws" and "available under law"—are terms of art with an established and clear meaning that permits state common law claims.

7

When a regulation includes a "term of art" with an accumulated "legal tradition and meaning," the agency "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (citation omitted). The term of art "'other applicable law' means *all* 'other applicable law,'" including a negligence claim under state common law. *FDIC v. Canfield*, 967 F.2d 443, 446 (10th Cir. 1992) (holding that a "simple negligence [action] survives" and was not preempted by federal law); *FDIC v. McSweeney*, 976 F.2d 532, 538 (9th Cir. 1992) (holding that the phrase "other applicable law" in a statute preserved the right to pursue state tort claims and thus state claims were not preempted); *FDIC v. Williams*, 779 F. Supp. 63, 64 (N.D. Tex. 1991) (similar). The phrase "available under law" is broader and refers to remedies at law. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief."); *see also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 128–29 (1991) (explaining that phrase "all other law" is "clear, broad, and unqualified" and "indicates no limitation").

Defendants' preemption arguments largely ignore the text of the regulations, despite binding precedent requiring them to "point specifically" to the federal text that displaces or conflicts with state law. *Virginia Uranium*, 587 U.S. at 767. Defendants do not cite any text from the ITSR to support their preemption argument. For the EAR, Defendants cite a few provisions (at 13) but those provisions actually undercut their argument. Defendants cite 15 C.F.R. § 734.2(a)(2) to argue that EAR tries to "minimize overlapping jurisdiction," Mot. at 13, but the provision expressly provides that those subject to the EAR "may have to comply with more than one regulatory program." Defendants also cite 15 C.F.R. § 734.12, Mot. at 13, which provides that anyone complying with "EAR is not relieved of the responsibility of complying with applicable foreign laws and regulations." In other words, EAR was expressly not intended to preempt any applicable foreign law. In short, none of the provisions Defendants cite undercut the plain and directly on point language providing that a violation of the EAR may subject someone to any other liability "available under law." 15 C.F.R. § 764.3.

8

Because the plain language of the relevant regulations provides that liability for violating the regulations may be imposed based on other applicable laws, Plaintiffs' state law claims based on Defendants' alleged violations of these regulations are not preempted by federal law.

**B.      Defendants' Preemption Arguments Are Wrong Regardless**

Because the plain language of the relevant regulations unambiguously permits state law claims, Defendants' non-textual implied preemption arguments are untenable. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (noting that the "plain language" of the federal law "necessarily contains the best evidence of Congress' preemptive intent"). But even on their own terms, Defendants' implied preemption arguments fail. "Implied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Id.* at 607 (citation modified). Defendants' freewheeling implied preemption arguments do not support holding that Plaintiffs' state law claims are preempted.

**1.      Field Preemption Does Not Apply**

Plaintiffs' claims are not field preempted. "The Supreme Court has indicated that courts should hesitate to infer field preemption unless the nature of the regulated subject matter permits no other conclusion or Congress has unmistakably so ordained." *United States v. Texas*, 97 F.4th 268, 278 (5th Cir. 2024) (citation modified). Field preemption only "exists when (1) the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation, or (2) where the field is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 874 (5th Cir. 2021) (quotation marks and citations omitted). Neither applies here.

**a.      Field preemption based on "foreign affairs" does not apply here.** While Defendants cite sweeping language about exclusive federal authority over foreign affairs from *Pink* (at 9) and the President's authority to speak with "one voice" from *Crosby* (at 15), Defendants' preemption argument ignores the limiting principles in the Supreme Court's foreign affairs cases. Broadly speaking, the federal government's foreign affairs authority concerns "[t]he powers to

9

declare and wage war, to conclude peace, to make treaties, [and] to maintain diplomatic relations with other sovereignties." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 318 (1936). But the federal government's foreign affairs authority does not preempt any state law with "some incidental or indirect effect in foreign countries." *Zschernig v. Miller*, 389 U.S. 429, 433 (1968); *see e.g.*, *Todok v. Union State Bank of Harvard, Neb.*, 281 U.S. 449, 456 (1930) (holding that a treaty did not preempt state law).

Preemption based on foreign affairs has only been narrowed since *Zschernig*, which "was decided in 1968, and the Supreme Court has not applied the doctrine since," nor has any Fifth Circuit case applied it because "the notion that a state law may be preempted even in the absence of federal policy is out of step with more recent, text-first preemption cases." *GH Am. Energy LLC v. Vegas*, No. 1:24-cv-648, 2025 WL 3090027, at \*12 (W.D. Tex. Sept. 16, 2025). "*Zschernig* stands for the proposition that the Court will scrutinize state statutes to determine whether such statutes have a direct impact on foreign relations; the case may not fairly be interpreted to mean that the court will strike down any state exercise of authority that has some indirect impact on foreign affairs or that is intended to affect the behavior of foreign governments." Constitutionality of S. Afr. Divestment Statutes Enacted by State & Loc. Governments, 10 U.S. Op. Off. Legal Counsel 49, 61 (1986). In other words, absent a direct impact on foreign relations contrary to stated federal policy, preemption based on "interference" with "foreign affairs" is not warranted.

There is no direct impact on foreign affairs here. Defendants' cited authorities for preemption based "foreign affairs" are all distinguishable because they involved state statutes specifically targeting foreign affairs, not common law claims, such as Plaintiffs' claims here, that at most have only an incidental effect in a foreign country. In *Crosby*, Massachusetts passed a statute specifically targeting foreign affairs by restricting state agencies from buying goods or services from companies doing business with Burma, which the Court held was conflict preempted because it created an obstacle for the President in exercising discretion over sanctions on Burma. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 367, 374 (2000). In *Garamendi*, California passed a statute specifically targeting foreign affairs by requiring insurance companies in the state

10

to disclose information about Holocaust-era insurance policies, which the Court held was conflict preempted because the President had already entered into executive agreements with Germany, Austria, and France regarding resolution of those particular insurance claims. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003).[2]

Defendants' field preemption argument based on *Crosby* and *Garamendi* is entirely misplaced because neither case was decided based on field preemption. But beyond that, *Crosby* and *Garamendi* do not support any form of preemption. Both cases concerned *positive* enactments of state law and both state laws specifically targeted foreign affairs where the federal government had a contrary foreign policy. This case is completely different because Plaintiffs' claims are generally applicable common-law claims to recover for personal injuries based on wrongful conduct from American companies. In cases similar to Plaintiffs' case, courts have rejected foreign affairs arguments similar to Defendants. *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 579 (5th Cir. 2010) ("The type of preemption established by *Garamendi* is thus inapplicable."); *Schydlower v. Pan Am. Life Ins. Co.*, 231 F.R.D. 493, 498 (W.D. Tex. 2005) ("The Court understands *Garamendi* to deal with a state's ability to pass a law which specifically circumvents federal foreign policy by creating a state cause of action which provides relief for its citizens. Here, the Court deals with an individual's lawsuit and not a state's creation of a new cause of action.") (citations omitted); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 214 (4th Cir. 2022) (rejecting preemption argument based on foreign affairs doctrine); *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 93 (D.D.C. 2014) ("There is no similar expression of federal policy in this case to indicate that the Court should not entertain these foreign tort claims on the basis of preemption.").

> **b.      Field preemption based on "export controls" does not apply here.** In evaluating field preemption, "the relevant field should be defined narrowly," *City of El Cenizo v. Texas*, 890

---

[2] Defendants' reliance on *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 52 (1st Cir. 1999) and *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012), is similarly misplaced because both cases involved state status specifically targeting foreign affairs instead of common law claims, such as Plaintiffs' claims here. Defendants also cite *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 759 (D.C. Cir. 2022), but this is not a preemption case.

F.3d 164, 177 (5th Cir. 2018), and courts should consider the pervasiveness of "federal regulations in the specific area covered by the tort claim or state law at issue," *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009). "[T]he area of tort law traditionally has been occupied by the states; therefore, unless Congress states a clear and manifest purpose for [a federal regulation] to supersede state tort law, [the federal regulation] is not preemptive." *Berry v. Lee*, 428 F. Supp. 2d 546, 560 (N.D. Tex. 2006) (Fitzwater, J.) (citation modified).

Defendants' field preemption argument (at 12) based on the "field of export controls" fails because Plaintiffs' state tort claims do not regulate the same field. Plaintiffs' claims are not based on a competing positive law scheme of export controls established by the Texas legislature. Instead, Plaintiffs' claims are based on state tort law—an area traditionally occupied by the states— that regulates domestic conduct by American companies that results in foreseeable injuries. This case is like *English v. Gen. Elec. Co.*, 496 U.S. 72, 83 (1990), where the Court held that a state tort claim from an employee who worked in a nuclear power plant was not preempted by the field of nuclear safety regulations because her claims was not motivated by enforcing safety rules. This case is also like *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), where the Court held that a state tort claim from the recipient of a defective pacemaker was not preempted by the field of medical device regulation because enforcing general tort duties does not impede the implementation or enforcement of federal requirements. *See also Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984) (holding that a tort claim from a plaintiff working in a nuclear power plant was not displaced by nuclear power plant safety regulations).

Similar to the plaintiffs in *English*, *Medtronic*, and *Silkwood*, Plaintiffs' claims here rely on general principles of tort law establishing that Defendants owe a duty of care to foreseeable plaintiffs injured by Defendants' negligent and reckless protocols for selling semiconductor components integral to weapons systems. Plaintiffs' claims are not brought to enforce export laws—the injury for which Plaintiffs seek recovery is death and dismemberment of their loved ones, not a violation of export laws. But as with any negligence per se claim, Defendants' alleged violations of export control regulations provide evidence that Defendants violated the duty of care

12

they owe to Plaintiffs not to ignore red flags about the end users for the semiconductors that Defendants sold. *See, e.g.*, *Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1398 (S.D. Tex. 1995) (rejecting field preemption argument as "manifestly improper" where "Defendants essentially argue that the extensive federal regulation controlling the export of chemicals preempts the field of export regulations and that 'Plaintiffs' theory of liability directly collides with the foreign policymaking authority of the Commerce Department'"). In short, where, as here, there is no evidence "that Congress intended to displace the application of state tort law to personal physical injury inflicted by [export violations]," "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) (citation modified).

Finally, Defendants' reliance of *Arizona* and *Hines* is misplaced. Mot. at 12. In both cases, the states established statutory schemes that competed with a federal scheme. *Arizona* involved a state statute regulating aliens, including a provision criminalizing an alien's failure to carry registration documentation, which the Court held was preempted based on the federal government's scheme of alien registration. *Arizona v. United States*, 567 U.S. 387, 400 (2012). *Hines* involved a Pennsylvania statute requiring alien registration, which the Court also struck down as preempted. *Hines v. Davidowitz*, 312 U.S. 52, 74 (1942). In relying on these cases, Defendants compare apples to oranges because they compare *positive* state laws targeting a specific field controlled by the federal government with Plaintiffs' *common-law* claims that are unrelated to the field of export controls, except that a violation of export controls proves negligence per se, Texas Civil Pattern Jury Charge ("PJC") 5.1, and provides strong evidence that Defendants' violated a duty of care owed to Plaintiffs under an ordinary negligence theory, PJC 2.1.

### 2. Conflict Preemption Does Not Apply

Plaintiffs' claims are also not conflict preempted. For conflict preemption, Defendants cite a handful of cases and invite a "freewheeling judicial inquiry" based on inapposite precedent. But Defendants' approach is a non-starter because courts "may not conduct 'a freewheeling judicial inquiry' to find such [a conflict], and the threshold for finding conflict preemption is 'high.'"

13

*Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 323 (5th Cir. 2023) (quoting *Whiting*, 563 U.S. at 607). "Conflict preemption applies (1) where complying with both federal law and state law is impossible; or (2) where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200 (5th Cir. 2013) (citation modified). Neither applies.

Starting with impossibility preemption, Defendants cannot satisfy this "demanding defense," *Wyeth v. Levine*, 555 U.S. 555, 573 (2009), which requires showing that a "party physically cannot comply with both a federal and state law," *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 505 (5th Cir. 2022). *Navistar* held that a tort claim was preempted because it was "impossible for a bus manufacturer to include an automatic lock on a door which must be manually operable." *Id.* at 507. There is no similar impossibility here, and Defendants have never claimed that it would be impossible for them to comply with both federal export laws and state tort law.

Moving forward to obstacle preemption, Defendants also cannot prove this defense. Defendants' leading assertion (at 14) that "states may not use state law to enforce and punish violations of federal law without creating impermissible conflicts" is contrary to black-letter law: "violation of a federal statute often constitutes a breach of the duty of care under the negligence *per se* doctrine." *Zyla*, 134 F.4th at 335 (citing the Restatement (Third) of Torts § 14 (2010)). Beyond that, state statutes often "incorporate federal criminal requirements," *id.* at 334,[3] and "in the vast majority of cases where federal and state laws overlap, allowing the States to [regulate] is entirely consistent with federal interests," *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). The purposes for federal export laws—"to further significantly the foreign policy of the United States,"

---

[3] *See, e.g.*, Nev. Rev. Stat. § 193.340 ("A provider of Internet service who violates the provisions of 18 U.S.C. § 2703 is guilty of a misdemeanor"); Ky. Rev. Stat. § 222.429 (barring certain conduct unless permitted under 18 U.S.C. § 220 and conversely barring any conduct that violates 18 U.S.C. § 220(b)); N.M. Stat. § 30-7-7.1 (providing that a person generally cannot sell firearms "without conducting a federal instant background check" unless they "hold[] a current and valid federal firearms license" under 18 U.S.C. § 923(a)); Tenn. Code § 39-17-1316(a)(1)(A)(iii) (barring selling firearms to anyone "ineligible to receive firearms under 18 U.S.C. § 922"); Conn. Gen. Stat. §§ 21a-243(g)–(h), 279 (generally incorporating the Federal Controlled Substances Act); Mich. Comp. Laws §§ 333.7204, 7403 (similar).

14

"to fulfill its declared international obligations," "to control the release of items for use in…acts of terrorism," and "to carry out the foreign policy of the United States, including the protection of human rights and the promotion of democracy," 50 U.S.C. § 4811—are not impeded here.

In evaluating obstacle preemption, what actually matters is whether the state law *prohibits* conduct that is *protected* under federal law or vice versa. There is a conflict between state and federal law when the "Congress enacts a law that imposes restrictions or confers rights on private actors" and "a state law confers rights or imposes restrictions that conflict with the federal law." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018); *see, e.g.*, *Sweet Jan Joint Venture v. FDIC*, 809 F. Supp. 1253, 1258 (N.D. Tex. 1992) (Fitzwater, J.) (holding that a state law claim for fraudulent transfer was obstacle preempted because a plaintiff could otherwise use state law to overturn a federal agency's decision to assist a regulated financial institution).

Here, Plaintiffs contend that state tort law prohibits Defendants from providing semiconductors either directly or indirectly to sanctioned end-users, including Russia and Iran, that could be used as critical components in weapons systems. Compl. ¶¶ 3, 4. For Defendants to succeed on obstacle preemption, they would need to show that providing semiconductors to Russia and Iran either directly or indirectly—by ignoring diversion risks, disregarding red flags, and failing to adopt effective compliance protocols—is protected by federal law. Defendants cannot seriously contend that such conduct is *protected* under federal law. In Plaintiffs' view, as pleaded in the Complaint, Defendants' conduct violates many federal laws and supports a negligence per se claim. Compl. ¶¶ 221–23. But even if Defendants were not held liable based on negligence per se, Defendants' conduct is certainly not protected by federal law: "Looking the other way when you know your products continue to empower Russian slaughter is not just morally dubious, it is against the law. We expect more from the American companies." Compl. ¶ 15 (citing statement from Senator Blumenthal). This dooms Defendants' obstacle preemption argument.

This limiting principle—that obstacle preemption applies where state law effectively prohibits what federal law protects—also distinguishes Defendants' cited authorities and Defendants' argument (at 17) about differences between state and federal law. In *Arizona*, the Court

15

held that a certain provision of state law was preempted because it allowed state police to arrest someone "based on nothing more than possible removability" while federal law required a notice to appear, a hearing, and a warrant to issue before a removable alien could be arrested for violating immigration law. 567 U.S. at 407. *Crosby* found obstacle preemption because "the state statute penalizes some private action that the federal Act…may allow." 530 U.S. at 376; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) (distinguishable because state law required airbags in vehicles and federal law provided various options for safety restraints).

While *Buckman* and *Gould* do not even mention obstacle preemption, both are distinguishable because—unlike Plaintiffs' claims—they did not concern "traditional state tort law principles." *Buckman* relied on federal law as a predicate for a fraud claim, *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352 (2001), and *Gould* concerned a positive law statutory scheme that competed with the federal scheme, *Wis. Dep't of Indus., Lab. & Hum. Relations v. Gould Inc.*, 475 U.S. 282, 283 (1986). Contrary to Defendants' arguments otherwise, Mot. at 16–17, Plaintiffs' claims are not properly viewed as state-law mechanisms for enforcing export laws, nor is federal law a predicate to Plaintiffs' claims. Plaintiffs' traditional tort claims— that Defendants have a duty of care not to supply critical weapons components to sanctioned actors that could be used to harm foreseeable plaintiffs—are strongly supported by federal law, but Defendants' duty is also evident from many sources aside from federal law. *See, e.g.*, Compl. ¶¶ 113–18 (state policy), ¶¶ 119–22 (Defendants' own words).

Defendants' argument (at 17) that Plaintiffs' claims would disrupt federal enforcement discretion is a non-starter. "[T]he possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption. The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Kansas*, 589 U.S. at 212. Defendants' contention (at 17) that "[s]tate laws that interfere or skew this enforcement…are preempted" has already been rejected because even "[t]he mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power."

16

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006). Here, there is no tension because both state and federal law "share the same asserted goal." Mot. at 17. While federal regulations provide the general framework for export compliance, state negligence law further informs and fills the silence on what are reasonable compliance measures.

Finally, Defendants contend (at 18–19) that Plaintiffs' claims impose additional substantive obligations, but Defendants fail to show that there is an impermissible conflict between state and federal law based on any additional requirement imposed by tort law. Because "congressional intent to supersede state laws must be 'clear and manifest,'" *English*, 496 U.S. at 79, and "Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted," *Silkwood*, 464 U.S. at 255, Plaintiffs' claims are not preempted.

## II.    Plaintiffs Have Plausibly Alleged Facts Sufficient To State a Claim for Each Alleged Cause of Action

Defendants' various arguments for dismissal based on Plaintiffs' purported failure to provide a "short and plain statement" in each of the more than 100-page long complaints do not support dismissal of any cases or claims.

### A.    Plaintiffs Have Plausibly Alleged Causation

#### 1.    Plaintiffs' Allegations on Causation are Sufficiently Specific

Defendants' lead argument regarding causation (at 20) is that Plaintiffs' allegations lack the requisite specificity. But this argument is factually and legally wrong. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs have met this standard.

On the facts, Plaintiffs allege that "Russian Iskander-M ballistic missiles, *known to contain Western electric components including TI, AMD, and Intel chips*, struck residential zones, killing and injuring Plaintiffs and their family members." Compl. ¶ 184 (emphasis added). In the chart included in Paragraph 167, Plaintiffs specifically identify these components—and components from Intel, AMD, and Texas Instruments are all included. *Id.* ¶ 167. Defendants also contend (at 20) that Plaintiffs do not allege "an export control violation by any Defendant caused their

injuries." But this contention is flatly contradicted by the Complaint. *See, e.g.*, *id.* ¶¶ 126, 150, 223, 280, 281. This contention is also beside the point because, as explained above, Plaintiffs' case does not hinge on "export-control" violations alone; this case is about Defendants foreseeably causing harm to Plaintiffs by selling their products (or distributing others' products) to channels known to lead directly to Russian and Iranian weapons. This is exactly what Plaintiffs allege—that Defendants' semiconductor components ended up in the weapons that harmed them only because Defendants sold them—including through Mouser—to channels that they knew, or should have known, would divert the components to Russia and Iran. *See, e.g.*, *id.* ¶¶ 150, 153–56, 168, 183.

Defendants' view that more is required at this stage is legally wrong. Plaintiffs are not required "to plead extremely 'detailed factual allegations' that satisfy each element" because that "creates a situation where a manufacturer will not be held liable for defective products because it has sole possession of the necessary document to ultimately prove the claim." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 317 (5th Cir. 2016) (citation omitted). *Twombly* and *Iqbal* "are not a basis to shield product manufacturers from liability." *Id.* at 318. Here, Plaintiffs have pleaded more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; *cf. Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711, at *4 (5th Cir. Dec. 6, 2022) (reversing dismissal because "complaint specified alternative designs that…are both safer and feasible and that, by not using them, the [product] was unreasonably dangerous," which "is enough at the pleading stage").

Comparing Plaintiffs' allegations to Defendants' cited authority is telling. In *Williams v. Wal-Mart Stores Texas LLC*, the plaintiff sued three manufacturers who each independently made "online grocery pickup carts" but was only injured by a cart made by one of them. No. 4:24-cv-00583, 2024 WL 4668556, at *1 (N.D. Tex. Nov. 4, 2024). It was impossible for all three defendants to have harmed the plaintiff, so the court required the plaintiff to be more specific. *Id.* at *2. And in *Rodriguez v. Xerox Bus. Servs., LLC*, the plaintiff included only a "conclusory allegation that [the defendant's actions] were the cause in fact of her injuries." No. 16-cv-00041, 2017 WL 3023213, at *4 (W.D. Tex. Mar. 27, 2017). In contrast to the bare allegations in *Rodriguez* and *Williams*, Plaintiffs explain in detail how Defendants sold their products despite knowing—or

18

closing their eyes to the fact—that those products were destined for Russia and Iran for use in weapons that foreseeably caused Plaintiffs' injuries. Compl. ¶¶ 150–66.) The Complaint further details how *each* Defendant's components were in the weapons, and how Mouser distributed those products. *Id.* ¶¶ 156, 167.

Defendants' also contend—without citing any authority—that allegations based "on information and belief" are inadequate, but this is wrong: "Pleadings based on information and belief are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 564 (N.D. Tex. 2024); *see also Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (information and belief permissible "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible") (citation modified).

Plaintiffs' allegations pleaded on information and belief are accompanied by significant factual detail explaining the basis for those beliefs, including a detailed investigation into Defendants' conduct by the U.S. Senate. Compl. ¶¶ 164–66. Plaintiffs further identify the weapons at issue and cite the source material for their belief that Defendants' components enabled Plaintiffs' injuries. *See e.g.*, *id.* ¶¶ 135–39, 167, n.69–96. Defendants ignore those allegations, but their ignorance does not make them disappear. Plaintiffs have adequately pleaded causation.

### 2. Defendants' Factual Arguments Are For the Jury

Defendants offer a variety of factual arguments against causation, including (1) others sell semiconductor components that could be used in weapons; (2) "there are numerous ways semiconductors could be found in Russian munitions"; and (3) some of their sales to Russia were "legal." Mot. 21–23. These "argument[s] attack[] the anticipated proof of causation, not the sufficiency of Plaintiffs' pleading." *Rusk v. Sandoz Inc.*, No. 14-cv-00549, 2016 WL 11782888, at *6 (W.D. Tex. July 28, 2016). Indeed, "causation is a quintessential question of fact." *Martin v. Ruredy 808, LLC*, No. 3:20-cv-264, 2023 WL 1868191, at *6 (N.D. Miss. Feb. 9, 2023); *see also Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999) (noting "the obvious proposition that the

19

question of causation is intensely factual"). Texas law is consistent with this basic rule and Texas courts routinely hold that "[t]he question of causation is a fact question for the jury." *J.K. & Susie L. Wadley Rsch. Inst. & Blood Bank v. Beeson*, 835 S.W.2d 689, 698 (Tex. App. 1992).

Nor do Plaintiffs need direct evidence of causation as Defendants' arguments imply. The Fifth Circuit has explained that "causation need not be supported by direct evidence. Circumstantial evidence and reasonable inferences therefrom are a sufficient basis for a finding of causation," so long as causation is not based on a "guess." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1044 (5th Cir. 2011) (citations omitted).

Defendants are free to argue to the jury that semiconductor components made by others were in the weapons at issue, that they were not negligent, or that their sales to Russia were "legal"—but none of these issues can be decided at the pleading stage, particularly given that Plaintiffs allege the opposite. As noted above, Plaintiffs alleged they were harmed by specific weapons that contain specific semiconductor components manufactured by Defendants or sold by Mouser. Compl. ¶¶ 167, 184. Plaintiffs further detail that the semiconductor components only made it into those weapons because Defendants negligently sold them. *Id.* ¶¶ 150, 153–56, 168, 183. And Defendants are wrong that *any* sales to Russia were "legal" until 2022; as explained in the Complaint, sales to Russia have been strictly regulated since 2014. *Id* ¶ 78. Defendants' arguments misapprehend Plaintiffs' case. Plaintiffs bring a tort case, not a claim for violation of the export laws. In any event, all of these issues are not pleading questions related to causation; they are factual disputes to be developed in discovery and evaluated at trial.

**B.    Plaintiffs' Claims Do Not Depend on a Private Right of Action in Export Laws**

Defendants contend (at 23–26) that several of Plaintiffs' claims cannot survive dismissal because federal export regulations do not provide a private right of action. But this argument misapprehends the relevance of federal export laws to this case. To be clear, Plaintiffs' allegations support that Defendants were negligent under the reasonable person test, PJC 2.1, but also that Defendants were negligent per se based on violations of federal export regulations, PJC 5.1. Where, as here, Defendants "already owe[] the plaintiff a pre-existing common law duty to act as

a reasonably prudent person," export regulations "merely [] define more precisely what conduct breaches that duty." *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998).

It is black-letter law that "violation of a Federal law or regulation can be evidence of negligence, and even evidence of negligence per se." *Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1379 (5th Cir. 1980) (vacating jury verdict where the trial court failed to provide instructions that violating statute was evidence of negligence). In evaluating whether a law or regulation supports a negligence per se claim, there are two threshold questions: (1) "whether the plaintiff belongs to the class that the statute was intended to protect," and (2) "whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry*, 973 S.W.2d at 305.

Defendants do not contest either point. Nor could they, as the relevant statutes and regulations were intended "to further significantly the foreign policy of the United States," "to fulfill its declared international obligations," "to control the release of items for use in…acts of terrorism," and "to carry out the foreign policy of the United States, including the protection of human rights and the promotion of democracy," 50 U.S.C. § 4811; *see also* 15 C.F.R. § 730.6 (same). The stated purposes of the export-control laws squarely support Plaintiffs' negligence per se claim. Plaintiffs belong in the class, Compl. ¶¶ 1, 6–8, 84–85, 135–41, and U.S. export-control laws were intended to prevent Plaintiffs' injuries: Defendants' technology was exported in violation of U.S. law, resulting in acts of terrorism and violations of human rights, *id.* ¶¶ 14–15, 184–85. That is exactly what export laws are intended to prevent. *Id.* ¶¶ 7, 125–33.

Defendants' citations (at 24–25) do not support their argument for a categorical rule excluding negligence per se claims where there is no private right of action. To start, there is no such categorical rule: "a negligence per se claim cannot be defeated solely because a statute does not provide a private right of action." *Bryant v. CIT Group/Consumer Fin.*, No. 16-cv-1840, 2018 WL 1740075, at *7 (S.D. Tex. Apr. 11, 2018). The actual test is "whether recognizing such an accompanying civil action would be inconsistent with legislative intent." *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 726 (S.D. Tex. 2025) (citation modified). Because the export regulations expressly permit liability based on "other applicable laws," *supra* § I.A, recognizing a

21

negligence per se claim is entirely consistent with the legislative intent.[4] And beyond that, Defendants' also cite inapposite authority[5] where the plaintiff asked the court to recognize a negligence per se claim where there was not also a common-law negligence claim. That isn't this case, so Defendants' concern (at 25) about this being the "second occasion" for recognizing a per se negligence claim is misplaced. Here, Plaintiffs have a common law negligence claim because they are foreseeable victims of Defendants ignoring red flags in exporting weapons technology, *infra* § II.C, but Plaintiffs also have a negligence per se claim because export regulations "define more precisely what conduct breaches that duty." *Perry*, 973 S.W.2d at 306. Courts routinely instruct juries on negligence per se claims in these circumstances, as reflected in the Texas pattern jury instructions on negligence per se claims. PJC 5.1.

### C.    Plaintiffs Have Plausibly Alleged that Defendants Owed a Duty of Care

Defendants misconstrue the source of their tort duty for negligence and gross negligence: it is their knowledge, or least notice, that the sales of their semiconductor components were enabling Russia and Iran to build weapons that Russia would use to injure Plaintiffs. Texas's pattern jury instructions provide that "negligence" means "failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." PJC 2.1. Companies of ordinary prudence would not ignore red flags, ignore diversion risks, fail to adopt adequate compliance protocols, and—worst of all—vote against investigating misuse of their products when the company knows or has notice that its products are being acquired by sanctioned end-users. Compl. ¶¶ 132–33. While export laws are relevant to "defin[ing] more precisely what conduct" breaches Defendants' duty, *see Perry*, 973 S.W.2d at 306, Defendants' duty of care for negligence stems from black-letter common law.

---

[4] This rule distinguishes *Armstrong v. Sw. Airlines Co.*, No. 3:20-cv-3610, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021) and *Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 21-cv-981, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022), where the Courts found that recognizing a negligence per se claim would be inconsistent with legislative intent.

[5] *Martinez v. Walgreen Co.*, 935 F.3d 396 (5th Cir. 2019) and *Brighthouse Life Ins. Co. v. Daboub*, 577 F. Supp. 3d 504 (N.D. Tex. 2021).

22

**1.       Defendants Owe Plaintiffs a Common Law Duty of Care**

Under Texas common law, defendants have a negligence duty to foreseeable plaintiffs under a *Palsgraf* analysis. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999) ("In essence, we consider whether the plaintiff was within the range of the defendant's apprehension such that her injury was foreseeable.") (citing *Palsgraf v. Long Island R.R.*, 162 N.E. 99, 99–100 (N.Y. 1928)). For a plaintiff to be foreseeable, "it is not required that the particular accident complained of should have been foreseen. All that is required is that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985) (citation modified). While courts "consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant," "foreseeability of the risk is the foremost and dominant consideration." *Greater Hou. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citation omitted); *see also Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002) ("When determining whether a duty exists, the foremost and dominant consideration is the foreseeability and likelihood of the risk.").

Plaintiffs are foreseeable victims of Defendants' negligence towards exporting semiconductor components that are integral to weapons technology operated by sanctioned end-users. Texas law has long recognized that for "those who handle explosives, combustible gases, gasoline, petroleum, electricity, and *similar dangerous commodities*, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved." *Robert R. Walker, Inc. v. Burgdorf*, 244 S.W.2d 506, 509 (Tex. 1951) (emphasis added). It is entirely foreseeable that critical weapons technology acquired by sanctioned end-users, including Russia and Iran, could be used to harm Americans and American allies. That is why export regulations prohibit such sales because export regulations are "intended to serve the national security, foreign policy, nonproliferation of weapons of mass destruction, and other interests of the United States,

23

which in many cases are reflected in international obligations or arrangements." 15 C.F.R. § 730.6. The United States' agreements with Ukraine make the Ukrainian people, including the Plaintiffs, foreseeable plaintiffs from Defendants' negligence in exporting critical weapon technology acquired by sanctioned end-users like Russia and Iran. When Ukraine surrendered its nuclear weapons in the 1990s, the United States agreed to provide security assurances to Ukraine,[6] including through adopting export laws.

Plaintiffs' allegations establish that Defendants had a duty to use reasonable care to avoid selling semiconductor components to channels likely to result in those components powering Russian weapons. Compl. ¶ 132. Defendants not only could foresee the risk of harm to Ukrainian civilians, including Plaintiffs—but knew about it since at least 1994 when the Budapest Memorandum was agreed to, and then again in 2014, when Russia invaded Crimea. *Id.* ¶ 73 (Budapest Memorandum); ¶ 168 (citing public information as far back as 1989); *see also id.* ¶ 78 (explaining 2014 executive orders on Russia's invasion of Crimea). Given the number of microchips flowing into Russia, the necessity of the components for the weapons to function, *id*. ¶¶ 140–43, and the number of Ukrainian citizens injured or killed by weapons armed with Defendants' semiconductor components, the risk is high. *Id.* ¶ 151. And the likelihood of injury to Ukrainian civilians from weapons armed with Defendants' semiconductor components is also high in light of Russia's aggression that has been occurring since 2014.

On the other side of the equation, there are no countervailing factors that would suggest not recognizing a duty. Defendants argue (at 28) that semiconductor components have social utility—of course they do. But Plaintiffs are not seeking to bar Defendants from making and selling semiconductor components. Plaintiffs are seeking damages for Defendants' failure to take "reasonable steps to prevent foreseeable misuse of their microchips in weapons systems targeting civilians." Compl. ¶ 32. Nor is there any undue burden on Defendants, who, as they acknowledge,

---

[6] Budapest Memorandum on Security Assurances in Connection with Ukraine's Accession to the Treaty on the Non-Proliferation of Nuclear Weapons, Dec. 5, 1994, 3007 U.N.T.S. 3, *available at* https://treaties.un.org/doc/Publication/UNTS/Volume%203007/v3007.pdf.

have duties under federal export laws to avoid selling their products to persons likely to use them for weapons in Russia and Iran. Based on the relevant factors—which Defendants do not analyze—and facts alleged in the Complaint, Defendants owe Plaintiffs a common law duty of care.

At a minimum, there are disputed facts regarding foreseeability as an element of duty that require a jury to decide. And "if the essential facts about foreseeability as an element of duty are disputed, the question is a fact issue for the jury." *Reyes v. Dollar Tree Stores, Inc.*, 221 F. Supp. 3d 817, 826 (W.D. Tex. 2016) (citation modified).

### 2.      Plaintiffs Do Not Seek To Impose a Duty To Control Russia

Defendants argue that they cannot "control the actions of Russia or of those who build weapons using semiconductors," and that "Texas law does not recognize a general duty to control others" or "to protect others from third-party criminal acts." Mot. 28–29 (citations omitted). This is a strawman. Plaintiffs do not contend that Defendants have control over Russia. But Defendants do have control over to whom they sell their products, and that is where the negligence occurred.

Texas courts recognize a duty of care where, as here, the "criminal conduct is the foreseeable result of a tortfeasor's negligence." *LaFleur v. Astrodome-Astrohall Stadium Corp.*, 751 S.W.2d 563, 564 (Tex. App. 1988); *see also Morin*, 309 F.3d at 327 n.4 ("[W]hen the third party's criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability." (citation omitted)). The "duty to control" case that Defendants cite, *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499 (Tex. 2017), demonstrates this point well. There, an employee fought another employee and the latter's father, killing the father. *Id.* at 502. The plaintiffs sought to hold the store liable for not stopping the fight—that is, not controlling its employees. *Id.* The store neither created nor foresaw the risk at issue. *Id.* at 507. For example, although the situation is now governed by statute, the Texas Supreme Court previously recognized a duty for a seller of alcohol not to sell it to a drunk person, who may foreseeably injure others. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987), *superseded by statute as explained in F.F.P. Operating Partners, LP v. Duenez*, 237 S.W.3d 680, 685 (Tex. 2007). The basis was "a common law duty of reasonable care based on the principle of foreseeability." *Id.* at 312.

25

Similarly, a Texas court recognized a duty "under common law negligence principles where the prospective [firearm] purchaser's manifest behavior or comportment have put the seller on notice that the purchaser, if possessed of a firearm, would foreseeably pose a danger to third persons." *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 847 (Tex. App. 1989); *see also Diggles v. Horwitz*, 765 S.W.2d 839, 841 (Tex. App. 1989) (holding that fact issues existed regarding negligence where pawn shop sold a gun to a mentally ill person who later committed suicide).

Here, Plaintiffs' case is similar and straightforward. Defendants did foresee or should have foreseen that by selling their semiconductor components without proper safeguards into commerce streams linked to the Russian and Iranian militaries, those components would ultimately be deployed to harm Ukrainian civilians like Plaintiffs. At a minimum, foreseeability should not be decided at this early stage of the case, before any evidence from Defendants on this issue has been produced. As noted above, where, as here, there is a dispute as to the foreseeability of the injury, that issue is for the jury to decide. *See Reyes*, 221 F. Supp. 3d at 826.

### 3. Federal and Texas Law and Policy Support and Inform Defendants' Common Law Duty of Care

Defendants argue (at 27) that *Mortberg v. Litton Loan Servicing, LP*, No. 4:10-cv-668, 2011 WL 4431946 (E.D. Tex. Aug. 30, 2011), and *Marlin v. Moody Nat'l. Bank, N.A.*, No. H-04-4443, 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006), reflect a brightline rule that a statute without a private right of action may never support a duty of care. Not so. *Mortberg* held that the statute did not create a private right of action and dismissed the *pro se* negligence claim because the complaint contained no "specific, factual allegations of negligence." 2011 WL 4431946, at *5. *Marlin* addressed the Bank Secrecy Act, which only obligates the government. 2006 WL 2382325, at *7.

The laws, regulations, and policies described in detail in the Complaint are relevant to Defendants' duty—and support imposing a duty of care—for several reasons. First, as explained above, *supra* § II.B, Texas law recognizes that statutes and regulations can inform the scope of a common law duty. Second, the focus on prohibiting Russia and Iran from acquiring Defendants' products for those belligerent nations to produce weapons is clear in the laws, regulations, and

policy statements cited in the Complaint. Defendants do not dispute that these laws apply to them. Nor do they dispute that they were aware of the increasing focus on Russia since 2014 when Russia invaded Crimea. The laws, regulations, and policies cited in the Complaint thus support a duty because they show that Defendants either did foresee or should have foreseen the risk at issue. Third, "social, economic, and political questions and their application to the facts at hand" inform the duty analysis. *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 893 (W.D. Tex. 2019) (citation omitted). Texas and U.S. policy is loud and clear: U.S.-made semiconductor components should not be used to harm Ukrainian people. This policy is outlined in detail in the Complaint, and undisputed by Defendants. Compl. ¶¶ 69–118. So contrary to Defendants' argument (at 28–29), policy considerations counsel strongly in favor of recognizing a duty in this case.

While Defendants contend (at 4) that "the foundation of Plaintiffs' claims is federal export-control law and U.S. foreign policy towards Ukraine," that overcomplicates this case. Defendants' duty of care rests on a much simpler foundation: "Looking the other way when you know your products continue to empower Russian slaughter is not just morally dubious, it is against the law. We expect more from the American companies." Compl. ¶ 15 (Statement of Senator Blumenthal); *compare* ¶¶ 178–79 (the Board of Directors for Texas Instruments votes *against* a proposal to investigate misuse of the company's products). As the Texas Supreme Court has explained, "changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983) (citation omitted). No reasonable person would disagree that Defendants ought to have taken steps to avoid the "illicit flood of semiconductors into Russia" that their neglect enabled. Compl. ¶ 9. Defendants have looked the other way long enough.

### D.    Plaintiffs' Claims Are Factually and Legally Sufficient

Defendants have raised several other claim-specific arguments for dismissal. Plaintiffs' allegations are sufficient to withstand dismissal on each claim except for conspiracy.[7]

---

[7] Plaintiffs agree that the Complaint does not state a claim for conspiracy and withdraw this Count.

***Negligence Per Se (Count 3).*** Defendants move to dismiss Plaintiffs' negligence per se claims because the federal export-control laws do not create a private right of action. Mot. at 23–25. But, as noted above, *supra* § II.B, that is not the test. To withstand dismissal, Plaintiffs must plead facts to support the elements of negligence per se: "(1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 27 (Tex. App. 2011) (citation omitted); *see also* PJC 5.1. Plaintiffs plead facts to support these elements. Compl. ¶¶ 221–223; *see also id.* ¶¶ 1, 6–8, 84–85, 125–33, 135–41, 184–85.

***Aiding and Abetting (Count 6).*** Defendants' contention (at 29) that "aiding and abetting" is not a recognized civil action is wrong: "Aiding and abetting and conspiracy are theories of derivative or vicarious liability. These liability-spreading theories depend upon liability for an underlying tort, and they survive or fail alongside that tort." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020). Defendants' cited authorities (at 29) either predate or ignore the Texas Supreme Court's June 2020 decision in *Nettles*, which unambiguously recognizes "aiding and abetting" as a cause of action under Texas state law. O'Connors Texas Causes of Action identifies five elements for an "aiding and abetting" tort, which is sometimes described as "assisting and encouraging," and those elements include: "[1] The primary actor committed a tort. [2] The defendant had knowledge that the primary actor's conduct constituted a tort. [3] The defendant had the intent to assist the primary actor in committing the tort. [4] The defendant gave the primary actor assistance or encouragement. [5] The defendant's assistance or encouragement was a substantial factor in causing the tort." O'Connors Texas Causes of Action Ch. 36-A § 1 (2026 ed.).

Plaintiffs' claim for "aiding and abetting" survives a motion to dismiss because Plaintiffs plausibly pleaded the elements of this claim: Russia is the primary actor who committed a tort, Compl. ¶ 237; Defendants knew that Russia's attacks on Ukraine constituted torts, *id.* ¶ 168 (listing 20 pages of sources providing notice); Defendants had the requisite intent because they knowingly continued to provide critical weapons components, *id.* ¶ 240; Defendants' technology was used by

28

the Russian military in these attacks, *id.* ¶¶ 141, 151, 157, 165, 167; and Defendants' technology was a substantial factor in causing Russia's attacks, *id.*; *see also id.* ¶ 241.

***Fraudulent Concealment by Nondisclosure (Count 7).*** Defendants also contend (at 30) that the allegations related to fraudulent concealment by nondisclosure are inadequate. To survive dismissal, Plaintiffs must plead facts supporting these elements: "(1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019). Plaintiffs pleaded facts supporting these elements. *See* Compl. ¶¶ 120–22, 152, 164, 178, 180, 243–49.

Defendants' argument that Plaintiffs failed to plead the evidence of a "confidential or fiduciary relationship" ignores that "[t]he duty to disclose may arise (1) when the parties have a confidential or fiduciary relationship, (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. 2007). Here, Defendants' duty to disclose is premised on their incomplete disclosure, failure to correct previous inaccurate disclosures, and misleading disclosures. Compl. ¶¶ 120–22, 152, 164, 178, 180.

Defendants' arguments related to Rule 9(b) are similarly misplaced. Plaintiffs do plead facts related to specific misleading statements made by Texas Instruments, Intel, and AMD. *Id.* ¶¶ 120–22, 152, 180. Beyond that, "the pleading requirements of Rule 9(b) may be to some extent relaxed where," as here, "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003). Plaintiffs' allegations related to fraudulent non-disclosure are sufficient to

29

withstand dismissal, but if the Court dismisses the claim, dismissal should be without prejudice, so that Plaintiffs may refile after discovery establishing facts sufficient to support this claim.

*Joint Enterprise (Count 8).* Defendants contend (at 31) that Plaintiffs fail to plausibly plead facts supporting a joint enterprise. To withstand dismissal, Plaintiffs must plead facts supporting the four elements of joint enterprise, as set forth in Texas's pattern jury instructions, which require that "the persons concerned have (1) an agreement, either express or implied, with respect to the enterprise or endeavor; and (2) a common purpose; and (3) a community of pecuniary interest in [the common purpose of the enterprise], among the members [of the group]; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." PJC 10.11; *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002) (listing elements).

Here, Plaintiffs have alleged facts supporting each element of their joint enterprise claim: (1) Defendants Texas Instruments, AMD, and Intel each collaborated with Defendant Mouser to facilitate the shipment of semiconductor components from Texas into Russia, Compl. ¶¶ 46, 50–52, 156, 23–32, 251; (2) for the common purpose of illegal export transactions and circumvention of applicable export-control laws, *id.* ¶ 252; (3) allowing each Defendant to financially benefit from the sale of components ultimately incorporated into foreign weapons systems, *id.* ¶¶ 8, 252–53; (4) made possible through Defendants' shared control over the enterprise's success, including policy decisions, distribution decisions, compliance oversight, distributor coordination and approvals, and shipment authorizations, *id.* ¶¶ 28–29, 34, 43, 44, 254–55. Defendants' arguments to the contrary (at 31–32) ignore these allegations and are untethered to the elements required in Texas's pattern jury instructions. Defendants' contention (at 27) that the lack of a private cause of action defeats a joint enterprise claim is wrong because the Defendants' negligence is an underlying tort supporting this claim. *Motloch v. Albuquerque Tortilla Co., Inc.*, 454 S.W.3d 30, 35 (Tex. App. 2014) (holding that the purpose of a joint enterprise claim "is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.") (citation omitted). Plaintiffs' joint enterprise claim survives dismissal.

***Wrongful Death and Survival (Counts 9, 10).*** Defendants argue (at 32) that Plaintiffs' wrongful death and survival claims "fail because the underlying tort claims fail." Plaintiffs agree that wrongful death and survival claims are derivative of the decedent's rights, meaning that, for example, Plaintiff Marta Shumylo's wrongful death and survival claims are based on the tort claims that Marta's 15-year-old daughter, A.K., could have brought for A.K.'s injuries from the missile that killed A.K. As explained throughout this brief, A.K. has plausibly alleged various underlying tort claims, so her mother's wrongful death and survival claims are viable.

Defendants also contend (at 32) that no plaintiff can bring a claim under the Texas Survival Statute because "Plaintiffs have not pleaded facts showing that estate administration is unnecessary or that they are the sole heirs at law of the relatives." This is wrong because Plaintiffs have alleged this for each plaintiff bringing a survival claim. *See, e.g.*, Compl. ¶¶ 24–26. As "the heirs…of the injured person," Tex. Civ. Prac. & Rem. Code § 71.021, Plaintiffs are "entitled to sue on behalf of the decedent's estate," *Aus. Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005). Moreover, "it is not necessary for the plaintiff to become appointed administrator of an estate if the plaintiff alleges and proves that no administration of the estate is pending and none is necessary." *Martone v. Livingston*, No. 4:13-cv-3369, 2015 WL 9259089, at *2 (S.D. Tex. Dec. 18, 2015). Plaintiffs have alleged this and thus have capacity to bring survival claims.[8]

### E.     Plaintiffs' Claims Are Not Time-Barred

Defendants argue (at 32) that three cases are time-barred based on Texas's two-year statute of limitations for personal injury actions. To be clear, it is undisputed that the claims from the Playground Attack (*Shumylo*) and the Hospital Attack (*Dmytrivna*) are timely filed. But this Court should not dismiss any cases as time-barred because the statute of limitations should be tolled

---

[8] Plaintiff Tvistok has her own personal injury claims for the Playground Attack (*Shumylo*), and she is also able to bring a survival claim as the "next friend" of her daughter, who is emotionally distraught after the death of her child, T.T. *BMW of N. Am., LLC v. Gunn*, No. 05-17-00600-cv, 2018 WL 3342693, at *5 (Tex. App. July 9, 2018) (permitting representation "by a next friend" when a party is "incapable, by reason of mental or bodily infirmity, of properly caring for his or her own interests in the litigation."). Plaintiffs intend to amend the Complaint to add T.T.'s mother as a plaintiff within the deadline.

31

based on the war in Ukraine and because Plaintiffs' claims did not accrue until September 2024. Beyond that, Defendants' statute of limitations argument is premature. Texas law provides that "an affirmative defense such as the running of limitations should be raised through a motion for summary judgment, not through a motion to dismiss." *In re D.K.M.*, 242 S.W.3d 863, 865 (Tex. App. 2007). "At the motion to dismiss stage, movants bear the burden of establishing as a matter of law that the statute of limitations applies to plaintiff's claim despite the discovery rule." *BKL Holdings, Inc. v. Globe Life Inc.*, 660 F. Supp. 3d 602, 612 (E.D. Tex. 2023). Here, there are disputed facts related to the discovery rule, and therefore Defendants' statute of limitations arguments are premature. But Defendants' time-bar arguments do not support dismissal regardless.

### 1.    The Statute of Limitations Should Be Tolled Based on the War

Defendants' statute of limitations argument (at 34–35) notably ignores Plaintiffs' allegations related to war-based tolling, including that "Texas has long recognized that a state of war supports suspending the statute of limitations on any civil action until one year after the close of war," Compl. ¶ 201, "Ukraine is presently a war-torn country and has been at war ever since February 2022," *id.* ¶ 202, "[s]ince the war began, Ukraine has constantly been subject to air-raids and attacks from missiles and drones," *id.* ¶ 203, and most importantly, "Plaintiffs have exercised due diligence in pursuing their claims but the state of war in Ukraine has prevented them from filing their claims sooner," *id.* ¶ 205.

For more than a century, Texas has recognized war-based tolling of a statute of limitations. *Grigsby v. Peak*, 57 Tex. 142, 150 (1882) (suspending the statute of limitations based on the "unsettled state of the country"); *Sickels v. Epps*, 8 S.W. 124, 128 (Tex. 1888) (noting that "[s]tatutes of limitation were suspended"); *Moseley v. Lee*, 37 Tex. 479, 481 (1873) (noting that all statutes of limitations on civil actions were suspended until one year post-war); *Cox v. Robison*, 105 Tex. 426, 436 (1912) (similar). While war-based tolling is (thankfully) not a legal issue that arises with much frequency, it should apply to the facts of these cases. From a first principles viewpoint, equitable tolling exists where the plaintiff has "an 'excusable reason' for not having brought suit in the limitations period which is 'of a nature sufficient to show that the abandonment

32

was not in fact voluntary.'" *Drake v. Consumers Cnty. Mut. Ins.*, No. 05-13-00170-cv, 2015 WL 2182682, at *8 (Tex. App. May 8, 2015) (citation omitted). It is difficult to imagine a more excusable reason for not having brought suit sooner than "where, as here, Plaintiffs are living in an active war zone" because of Defendants' wrongdoing. Compl. ¶ 207. Russian missile and drone attacks are ongoing, and the weapons deployed in those attacks continue to be run with Defendants' semiconductor components. *Id.* ¶¶ 54, 140–49. Plaintiffs remain subject to continual air raid warnings, making any investigation or even basic life exceedingly difficult. Defendants' wrongful conduct impairs Plaintiffs' lives and makes it virtually impossible for Plaintiffs to investigate their claims. *See Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (holding that equitable relief requires proof of "continuing harm or a real and immediate threat of repeated injury in the future."). This Court should toll the statute of limitations based on the war in Ukraine.

### 2.    Plaintiffs' Claims Did Not Accrue Until September 2024

Even if the Court were not inclined to toll the statute of limitations outright, none of Plaintiffs' claims should be time-barred because their claims did not accrue until September 2024. Under Texas law, the discovery rule defers accrual until "the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Marcus & Millichap Real Estate Inv. Servs. of Nev., Inc. v. Triex Texas Holdings, LLC*, 659 S.W.3d 456, 462 (Tex. 2023) (citation omitted). In addition, the discovery rule tolling is assessed at the summary judgment or trial stage—not in the context of a Rule 12 motion. *See In Re Depuy Orthopaedics, Inc.*, 888 F.3d 753, 777 (5th Cir. 2018) (affirming discovery rule extension because "appellate courts will reverse the factfinder's judgment on the accrual date only where the connection between the treatment decision and the pain is obvious"). Defendants cite ten cases as to why the discovery rule should not apply here. All of them except for one are summary judgment or mandamus cases because the general rule is that discovery rule statute of limitations arguments are improper in Rule 12 motions. The only Rule 12 case Defendants cite is *Doe v. City View Indep. Sch. Dist.*, 736 F. Supp. 3d 459 (N.D. Tex. 2024), where the discovery rule plainly did not apply because the sexual assault victim knew of the assault and the assailant at the time of the attack.

33

Here, Plaintiffs' claims did not accrue until September 10, 2024, at the earliest, because that is when the U.S. Senate Permanent Subcommittee on Investigations published "The U.S. Companies' Technology Fueling the Russian War Machine" (Senate Report) findings, which provided the threshold knowledge of facts identifying Defendants' wrongful acts. Compl. ¶ 168. The Senate Report was the first time that Plaintiffs could have learned both (1) Defendants' semiconductors and technology were in the weapons used in attacks against Ukraine and (2) Defendants' semiconductors and technology were in those weapons due to Defendants' neglect or willful failure to comply with export laws. *Tereschenko* Compl. ¶¶ 202–05; *Zaplyvanyi* Compl. ¶¶ 197–200; *Babich* Compl. ¶¶ 198–201. The Senate Report informed the public of findings from an investigation that was "the first to highlight specific flaws in compliance programs across the industry," and found that American companies, including Defendants, by "knowing neglect or willful ignorance" were "objectively and consciously failing to prevent Russia from benefiting from the use of their technology," which was "against the law." Senate Report at 2–3. Because Plaintiffs could not have learned about Defendants' wrongful acts before September 2024 and Plaintiffs' claims were filed less than two years later in December 2025, their claims are timely.

Defendants' arguments to the contrary are wrong. While Defendants identify three publications from 2023—including a CNN report, an article from the National Defense Magazine, and a working paper from Stanford University—that all pre-dated the Senate Report, those publications did not provide Plaintiffs with the necessary facts about Defendants' wrongful acts. First, Defendants do not identify any allegations indicating that Plaintiffs read any of these publications, nor do any such allegations exist. That alone precludes dismissal. *See Am. Precision Ammunition, LLC v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (holding that dismissal based on an affirmative defense is only appropriate when "that affirmative defense appears on the face of the complaint."). Second, unlike the September 2024 Senate Report, none of these publications provided the necessary facts about Defendants' wrongful acts, nor had the credibility of a U.S. Senate investigation. The National Defense Magazine article did not identify any of the Defendants. Far from identifying any wrongful act from the Defendants, CNN reported that

34

"[t]here is no evidence suggesting that any of those companies are running afoul of US sanctions laws and knowingly exporting their technology to be used in drones," and CNN quoted Texas Instruments representing that it "complies with applicable laws and regulations in the countries where we operate." The focus of the Stanford working paper was on methods for strengthening export laws, not identifying breaches. In short, even if Plaintiffs had read these publications, none of them put Plaintiffs on notice about Defendants' wrongful acts.

### 3.    Fraudulent Concealment Precludes Defendants' Time-Bar Defense

Plaintiffs' inability to learn about Defendants' wrongful conduct before September 2024 was compounded by Defendants' affirmative misrepresentations to the contrary. When a defendant fraudulently conceals information, "the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Cass v. Stephens*, 156 S.W.3d 38, 64 (Tex. App. 2004). While Defendants contend (at 35) that they had no duty to disclose, "Texas courts do recognize that affirmative misrepresentations can support a fraudulent concealment defense in the absence of a duty." *Harris v. BMW of N.Am., LLC*, No. 4:19-cv-00016, 2020 WL 7074878, at *5 (E.D. Tex. Dec. 3, 2020) (quotations omitted). Moreover, "[a] duty to disclose may arise…when one voluntarily discloses information, the whole truth must be disclosed [and] when one makes a partial disclosure and conveys a false impression." *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App. 2010) (citation modified). Between concealing their role in supplying semiconductor components to Russia and Iran, refusing to respond to information requests, and representing their compliance with sanctions laws, Defendants actively prevented Plaintiffs from learning about Defendants' wrongful conduct before September 2024. Compl. ¶¶ 196, 243–49, 255. Defendants cannot shield themselves from liability now based on the statute of limitations. No claims are time-barred.

### <u>Conclusion</u>

Defendants' motion to dismiss should be denied.

35

Dated: April 20, 2026

Respectfully submitted,

*/s/ Robert A. Julian*

Mikal C. Watts (Texas Bar No. 20981820)
mikal@wattsllp.com
**WATTS LAW FIRM LLP**
811 Barton Springs Road, Suite 725
Austin, TX 78704
Telephone: (512) 479-0500

Robert A. Julian (CA Bar No. 88469, admitted
NDTX Bar on 12/18/1986)
rjulian@bakerlaw.com
Dustin M. Dow (OH Bar No. 0089599,
admitted NDTX Bar on 03/25/2026)
ddow@bakerlaw.com
Lauren Attard (Admission Pending)
lattard@bakerlaw.com
Renee M. Knudsen (DC Bar No. 1615689,
admitted NDTX Bar on 02/18/2026)
rknudsen@bakerlaw.com
Karina Loya (Texas Bar No. 24104687)
kloya@bakerlaw.com
**BAKER & HOSTETLER LLP**
2850 North Harwood Street, Suite 1100
Dallas, TX 75201
Telephone: (214) 210-1200

Charla Aldous (Texas Bar No. 20545235)
caldous@aldouslaw.com
**ALDOUS LAW**
4311 Oak Lawn Avenue, Suite 150
Dallas, TX 75219
Telephone: (214) 307-6307

James Shaw (Texas Bar No. 00784955)
jshaw@carabinshaw.com
**CARABIN & SHAW P.C.**
875 E Ashby Pl Ste 1100
San Antonio, TX 78212-4109
Telephone: (210) 222-2288

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

Dated: April 20, 2026

*/s/ Robert A. Julian*
Robert A. Julian

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the 35-page limit set in the Court's March 19, 2026 Order (ECF 48).

Dated: April 20, 2026

*/s/ Robert A. Julian*
Robert A. Julian