## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARTA SHUMYLO, INDIVIDUALLY, AND A.K., a minor (DECEASED), BY AND THROUGH HEIR, MARTA SHUMYLO, NATALIIA NIKITSKA, INDIVIDUALLY, AND D.N., a minor (DECEASED), BY AND THROUGH HEIR, NATALIIA NIKITSKA, VALENTINA TSVITOK, INDIVIDUALLY, AND T.T., a minor (DECEASED), BY AND THROUGH HEIR, VALENTINA TSVITOK, | § § § § § § § § § § § § | CIVIL ACTION NO. 3:25-CV-3400-D (Consolidated for Pretrial Purposes Only With Civil Action Nos. 3:25-CV-3402-D, 3:25-CV-3403-D, 3:25-CV-3406-D, and 3:25-CV-3416-D) |
| *Plaintiffs,* | | |
| v. | § § | |
| TEXAS INSTRUMENTS INCORPORATED, ADVANCED MICRO DEVICES, INC., INTEL CORPORATION, MOUSER ELECTRONICS, INC., and DOES 1-100, | § § § § § § § § | |
| *Defendants.* | | |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................1

II.  FEDERAL LAW PREEMPTS PLAINTIFFS' CLAIMS ....................................2

    A.  Plaintiffs' Opposition Brief Clarifies the Conflict with Federal Law .....................2

    B.  Overarching Errors Undermine Plaintiffs' Preemption Arguments ........................3

    C.  Plaintiffs' Field-Preemption Arguments Mischaracterize Their Claims and the Law ..................................................................................................6

III.  PLAINTIFFS' CLAIMS FAIL AS PLEADED, UNDER TEXAS LAW ...........................8

IV.  ALL CLAIMS BROUGHT BY THE *TERESCHENKO*, *ZAPLYVANYI*, AND *BABICH* PLAINTIFFS ARE TIME-BARRED ...................................................14

V.  CONCLUSION.................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allen v. Walmart Stores, L.L.C.*,
  907 F.3d 170 (5th Cir. 2018) ........................................................................................10

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003)........................................................................................................7

*Amy v. City of Watertown*,
  130 U.S. 320 (1889)......................................................................................................14

*Armstrong v. Southwest Airlines Co.*,
  No. 3:20-cv-3610, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021) ..........................11

*Berry v. Lee*,
  428 F. Supp. 2d 546 (N.D. Tex. 2006) (Fitzwater, J.) .................................................5

*Buckman Co. v. Pls.' Legal Comm.*,
  531 U.S. 341 (2001).....................................................................................................5, 6

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000).................................................................................................1, 2, 3

*Cruden Bay Holdings, LLC v. Jezierski*,
  No. 3:21-CV-01170-E, 2022 WL 447080 (N.D. Tex. Feb. 14, 2022)....................12

*In re DePuy Orthopedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
  888 F.3d 753 (5th Cir. 2018) ......................................................................................12

*Doe v. Exxon Mobil Corp.*,
  69 F. Supp. 3d 75 (D.D.C. 2014)..................................................................................8

*Dunbar v. Seger-Thomschitz*,
  615 F.3d 574 (5th Cir. 2010) ........................................................................................7

*Eli Lilly & Co. v. Revive Rx, LLC*,
  812 F. Supp. 3d 708 (S.D. Tex. 2025) .......................................................................11

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990).........................................................................................................8

*Farina v. Nokia Inc.*,
  625 F.3d 97 (3d Cir. 2010)............................................................................................6

*FDIC v. Canfield*,
  967 F.2d 443 (10th Cir. 1992) ......................................................................................5

ii

*FDIC v. McSweeney*,
   976 F.2d 532 (9th Cir. 1992) ............................................................................................5

*FDIC v. Williams*,
   779 F. Supp. 63 (N.D. Tex. 1991) ....................................................................................5

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000)........................................................................................................3, 5

*Goodner v. Hyundai Motor Co.*,
   650 F.3d 1034 (5th Cir. 2011) ..........................................................................................9

*Gozlon-Peretz v. United States*,
   498 U.S. 395 (1991)...........................................................................................................4

*In re Great Lakes Dredge & Dock Co.*,
   624 F.3d 201 (5th Cir. 2010) ..........................................................................................10

*Johnson v. Tyson Foods, Inc.*,
   580 F. Supp. 3d 382 (N.D. Tex. 2022) ..........................................................................8, 9

*Jones v. Alcoa, Inc.*,
   339 F.3d 359 (5th Cir. 2003) ..........................................................................................14

*Kansas v. Garcia*,
   589 U.S. 191 (2020)........................................................................................................3, 6

*Madeira v. Affordable Hous. Found., Inc.*,
   469 F.3d 219 (2d Cir. 2006)...............................................................................................3

*Martinez v. Walgreen Co.*,
   935 F.3d 396 (5th Cir. 2019) ..........................................................................................11

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2022) ..............................................................................................7

*McGowan v. S. Methodist Univ.*,
   715 F. Supp. 3d 937 (N.D. Tex. 2024) ............................................................................15

*McPeak-Torres v. Brazoria Cnty. Tex.*,
   2014 WL 12591850 (S.D. Tex. Nov. 5, 2014) .................................................................13

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)............................................................................................................8

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993).............................................................................................................5

*Movsesian v. Victoria Versicherung AG*,
    670 F.3d 1067 (9th Cir. 2012) ...................................................................................................7

*Nat'l Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999)........................................................................................................7

*In re New Era Enters. Inc. Data Incident Litig.*,
    No. H-25-732, 2026 WL 303547 (S.D. Tex. Feb. 4, 2026)......................................................11

*NLMK Pa., LLC v. U.S. Steel Corp.*,
    592 F. Supp. 3d 432 (W.D. Pa. 2022).....................................................................................6, 7

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*,
    499 U.S. 117 (1991)..................................................................................................................5

*In re Parkcentral Glob. Litig.*,
    No. 3:09-CV-0765-M, 2010 WL 3119403 (N.D. Tex. Aug. 5, 2010).....................................13

*Rodgers v. Lancaster Police & Fire Dep't*,
    819 F.3d 205 (5th Cir. 2016) ..................................................................................................13

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*,
    359 U.S. 236 (1959)..................................................................................................................6

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984)..................................................................................................................8

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)................................................................................................................12

*Tornado BUS Co. v. BUS & Coach Am. Corp.*,
    No. 3:14-cv-3231-M, 2015 WL 11120584 (N.D. Tex. Dec. 15, 2015)..................................12

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)................................................................................................................12

*United States v. Pink*,
    315 U.S. 203 (1942)..................................................................................................................7

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*,
    No. 3:21-CV-981-L, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022)........................................11

*Zschernig v. Miller*,
    389 U.S. 429 (1968)..................................................................................................................7

*Zyla Life Sciences, L.L.C. v. Wells Pharma of Hou., L.L.C.*,
    134 F.4th 326 (5th Cir. 2025) ...................................................................................................6

STATE CASES

*In re Academy, Ltd.*,
625 S.W.3d 19 (Tex. 2021)..........................................................................................................10

*Allred v. Freestone Cnty. Fair Ass'n, Inc.*,
No. 07-20-00168-CV, 2022 WL 1153152 (Tex. App. Apr. 18, 2022)....................................13

*Cox v. Robison*,
105 Tex. 426 (1912)....................................................................................................................14

*Grigsby v. Peak*,
57 Tex. 142 (1882)......................................................................................................................14

*Hicks v. Grp. & Pension Adm'rs, Inc.*,
473 S.W.3d 518 (Tex. App. 2015)..............................................................................................13

*Hou. Area Safety Council, Inc. v. Mendez*,
671 S.W.3d 580 (Tex. 2023).......................................................................................................10

*In re Luminant Generation Co.*,
711 S.W.3d 13 (Tex. App. 2023)................................................................................................11

*Moseley v. Lee*,
37 Tex. 479 (1872)......................................................................................................................14

*Nettles v. GTECH Corp.*,
606 S.W.3d 726 (Tex. 2020).............................................................................................11, 12, 13

*Roxo Energy Co. v. Baxsto, LLC*,
713 S.W.3d 404 (Tex. 2025).......................................................................................................12

*Russell v. Ingersoll-Rand Co.*,
841 S.W.2d 343 (Tex. 1992).......................................................................................................13

*Sickels v. Epps*,
8 S.W. 124 (Tex. 1888)...............................................................................................................14

*St. Joseph Hospital v. Wolff*,
94 S.W.3d 513 (Tex. 2002).........................................................................................................13

*Trevino v. Ortega*,
969 S.W.2d 950 (Tex. 1998).......................................................................................................11

*Valdez v. Hollenbeck*,
465 S.W.3d 217 (Tex. 2015).......................................................................................................15

*Wise v. SR Dallas, LLC*,
436 S.W.3d 402 (Tex. App. 2014)..............................................................................................15

## FEDERAL STATUTES

50 U.S.C. § 4811 ..............................................................................................................3, 7

50 U.S.C. § 4819 ..............................................................................................................3, 4

50 U.S.C. § 4825(b)(1) ........................................................................................................4

## FEDERAL REGULATIONS

15 C.F.R. § 734.12 ...............................................................................................................4

15 C.F.R. § 764.3 .............................................................................................................3, 4

31 C.F.R. § 560.701(e).................................................................................................3, 4, 5

Revisions to Export Enforcement Provisions, 85 Fed. Reg. 73411, 73412 (Nov.
      18, 2020) ....................................................................................................................4

## TREATISES

31 Williston on Contracts § 79:71 (4th ed.)......................................................................14

## I.    INTRODUCTION

Neither Texas law nor federal law permits Plaintiffs' claims, which seek to hold American semiconductor companies liable for foreign military operations they had no role in planning or executing.  Federal law preempts Plaintiffs' claims, as a matter of both field preemption and conflict preemption.  Plaintiffs' opposition cites no case that looks remotely like this one, because—at a constitutional level—Plaintiffs cannot use Texas common law to impose export-control standards.  Even under Texas law, Plaintiffs cannot plead required elements of their claims.  Among other defects, the Petitions lack factual allegations linking Defendants' products to the actual weapons that caused Plaintiffs' injuries or causally connecting those injuries to any breach of duty.

Plaintiffs' opposition makes the preemptive conflict here apparent.  Plaintiffs admit their case does not "hinge on 'export-control' violations alone" and attempt to brush off (but do not deny) that their claims "impose additional substantive obligations" on Defendants.  Opp. 17, 18. But state-law obligations pertaining to sanctions and export controls are preempted if they go beyond federal law.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000). Plaintiffs sidestep *Crosby*—as well as field-preemption principles—only through a series of missteps: relying on statutory and regulatory phrases that do not save state-law claims; claiming that "tort" is insulated from preemption because it is a traditionally state-regulated field; and downplaying the national-security and foreign-relations implications of their claims.  Ultimately, all paths lead to the same place *Crosby* does: Plaintiffs' claims are preempted.

There is also a profound causation defect at the core of this case.  Plaintiffs seek to hold Defendants responsible for injuries and deaths caused by specific Russian air-strikes—at a playground, a children's hospital, a school dormitory, a home, and a warehouse—without pleading that *any* Defendant or *any* Defendant's product had an actual role in those injuries.

1

They plead only that Defendants' products (and "Western semiconductors" writ large) have been found in other weapons at other times, but not the specific weapons that injured them.  Similarly, Plaintiffs have not connected their injuries to any violation of export-control law or compliance measures, despite relying on those laws to establish a duty of care.

For these reasons and others addressed below, Plaintiffs' Petitions must be dismissed.

## II.  FEDERAL LAW PREEMPTS PLAINTIFFS' CLAIMS

Federal law impliedly preempts plaintiffs' claims, both under field-preemption and conflict-preemption principles.  Mot. 8–19.  Plaintiffs' arguments to the contrary mischaracterize relevant federal laws and turn a blind eye to the unavoidable impact their claims would have on U.S. foreign affairs and export controls.

### A.  Plaintiffs' Opposition Brief Clarifies the Conflict with Federal Law

Plaintiffs' opposition makes a quiet but dispositive concession under conflict-preemption principles: that their claims impose export or sanctions obligations that differ from what federal law requires.  *See Crosby*, 530 U.S. at 379–80.  Responding to Defendants' argument that Plaintiffs failed to plead any export-control violation, Plaintiffs assert that their "case does not hinge on 'export-control' violations alone"—that is, in their view, their claims could succeed even *without* any violation of federal law, so long as "Defendants foreseeably caus[ed] harm to Plaintiffs by selling their products . . . to channels known to lead directly to Russian and Iranian weapons."  Opp. 18.  Plaintiffs characterize "federal regulations" as "provid[ing] the general framework for export compliance," while state tort "fills the silence on what are reasonable compliance measures."  *Id.* 17.  They do not deny that their claims "impose additional substantive obligations" on Defendants.  *Id.*  Under *Crosby*, that is the end of Plaintiffs' claims because greater state restrictions are necessarily "at odds with achievement of the federal decision about the right degree of pressure to employ" via export controls.  530 U.S. at 379–80.

2

Even if Plaintiffs' claims were coextensive with federal law—which they are not—they would improperly deny the Executive Branch discretion in the delicate area of foreign relations. Plaintiffs assert that there is "no tension because both state and federal law 'share the same asserted goal.'" Opp. 17. That is not enough to avoid a preemptive conflict. *Crosby, Buckman, Arizona*, and *Gould* all involved state laws that "share[d] the same asserted goal" as federal law. *See* Mot. 14–17. The cases on which Plaintiffs rely are off-point. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006), did not concern overlapping federal and state enforcement mechanisms at all. And *Kansas v. Garcia*, 589 U.S. 191, 212 (2020), concerned criminal law, which is an area of traditional state enforcement.

Plaintiffs are also wrong that preemption requires federal law to affirmatively protect conduct that states prohibit. Opp. 15. In both *Crosby* and *Geier*, it was enough that Congress elected *not* to prohibit certain conduct. *Crosby*, 530 U.S. at 378; *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 879 (2000). Export controls, like sanctions, "are drawn not only to bar what they prohibit but to allow what they permit." *Crosby*, 530 U.S. at 380. And ECRA itself states that it is the "policy of the United States . . . [t]o use export controls only after full consideration of the impact on the economy of the United States and *only to the extent necessary*." 50 U.S.C. § 4811(1) (emphasis added). Plaintiffs cannot override that choice using Texas tort law.

**B.      Overarching Errors Undermine Plaintiffs' Preemption Arguments**

***Purported savings clauses.*** Plaintiffs first rely on an incorrect textual argument: that federal export-control laws "expressly permit state common law claims." Opp. 7–9. They do not. The export-control provisions Plaintiffs cite do not "save" state-law claims. Not one of these provisions references state law—not in the specific subsection Plaintiffs cite, and not in the broader statutory section in which it is located. *See* 15 C.F.R. § 764.3; 50 U.S.C. § 4819(f)(1); 31 C.F.R. § 560.701(e). Each provision leaves room for the operation of other federal laws—and

3

in some cases, other countries' laws.  Not state law.

For the EAR, Plaintiffs point to 15 C.F.R. § 764.3(a), which provides that "[v]iolations of ECRA" and related regulations "are subject to the administrative sanctions described in this section and to any other liability, sanction, or penalty available under law."  The same provision refers to overlapping laws enforced by other federal agencies, but it notably omits any reference to state law.  15 C.F.R. § 764.3(c).  Regulatory history confirms that the agency was concerned with overlapping *federal* laws, administered by different *federal* agencies.  Revisions to Export Enforcement Provisions, 85 Fed. Reg. 73411, 73412 (Nov. 18, 2020).  Tellingly, the EAR also contains an entire provision confirming that foreign law applies.  15 C.F.R. § 734.12.  There is no similar provision for state law.  Courts generally treat such omissions as intentional and purposeful.  *See Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991).

Plaintiffs' reading of ECRA is similarly faulty.  They point to a line providing that nothing in ECRA's penalty provisions "limits . . . the availability of other administrative or judicial remedies with respect to violations of this subchapter."  50 U.S.C. § 4819(f)(1).  Again, the omission of state law is meaningful because ECRA recognizes that other *federal* laws operate in overlapping spaces and may impose overlapping penalties.  50 U.S.C. § 4825(b)(1).  Those federal laws are the "other administrative or judicial remedies" § 4819 refers to.  ECRA also directs the President to "achieve effective coordination" with authority exercised under the federal Arms Export Control Act and "all other export control and sanctions authorities exercised by *Federal* departments and agencies."  50 U.S.C. § 4825(b)(1) (emphasis added).  State law is not mentioned.

The ITSR regulations are even further afield.  Plaintiffs rely on 31 C.F.R. § 560.701(e), which provides that "[v]iolations of this part may also be subject to relevant provisions of

4

Customs laws and other applicable laws." 31 C.F.R. § 560.701(e).  That is not a sweeping invitation for state tort regulation.  It follows a list of multiple federal laws—including criminal laws—describing potential penalties for violations.  *Id.*

Plaintiffs cite only a trio of decisions concerning the FDIC's authority to pursue state tort claims against regulated parties that used the phrase "other applicable law."  Opp. 8 (citing *FDIC v. Canfield*, 967 F.2d 443, 446 (10th Cir. 1992); *FDIC v. McSweeney*, 976 F.2d 532, 538 (9th Cir. 1992); *FDIC v. Williams*, 779 F. Supp. 63, 64 (N.D. Tex. 1991)).  All of these cases concern the same statute—in a very different context from this one—so they do not establish a general definition of "other applicable law."  Plaintiffs' other authorities are equally off-base, because— among other things—none construes the relevant language, let alone to assess preemption in a foreign-relations context.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (construing "other appropriate equitable relief"); *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 128–29 (1991) (construing provisions "exempt[ing]" persons from "all other law").

Savings clauses also do "*not* bar the ordinary working of conflict pre-emption principles."  *Geier*, 529 U.S. at 868–69 (emphasis added).  In *Geier* itself, the law at issue stated that "'compliance with' a federal safety standard 'does not exempt any person from any liability under common law.'"  *Id.* at 868 (citation omitted).  But, as in *Geier*, state tort claims may still be preempted if they conflict with a federal regulatory scheme.  *Id*.

**Presumption against preemption.**  Plaintiffs also rely on a presumption against preemption, ignoring the foreign-relations and national-security aspects of their claims.  Opp. 6, 10–12, 14.  As a result, they rely on cases analyzing fields "which the States have traditionally occupied."  *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 347 (2001) (citation and internal quotation marks omitted); *see* Opp. 12 (quoting *Berry v. Lee*, 428 F. Supp. 2d 546, 560 (N.D.

5

Tex. 2006) (Fitzwater, J.) (workplace safety)).  The cases Plaintiffs cite recognize this: *Zyla Life Sciences, L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 330 (5th Cir. 2025), emphasizes states' "traditional prerogative to police drug safety," and *Garcia* reasons that "criminal law enforcement has been primarily a responsibility of the States," 589 U.S. at 212.

This case could not be farther from an area "traditionally occupied" by states.  Foreign relations, international trade, and national security are areas in which the states have *no* history of regulation because—at a constitutional level—those areas are inherently federal.  *See, e.g., NLMK Pa., LLC v. U.S. Steel Corp.*, 592 F. Supp. 3d 432, 445 (W.D. Pa. 2022).  As a result, there is no presumption against preemption.  Plaintiffs insist that "tort" writ large is an area of traditional state control, *e.g.*, Opp. 11–12, but courts have repeatedly refused to presume against preemption simply because a plaintiff brings common-law tort claims, *see, e.g.*, *Buckman Co.*, 531 U.S. at 347; *NLMK Pa.*, 592 F. Supp. 3d at 445.

***Distinguishing torts from statutes.***  More broadly, Plaintiffs repeatedly argue that preemption principles operate differently for state tort suits and state statutes.  *See* Opp. 10–11 & n.2, 12–13, 16.  They do not cite a single case to support this proposition.  Nor could they.  The Supremacy Clause does not distinguish between statutes and common law.  Instead, "[p]reemption can apply to all forms of state law, including civil actions based on state law." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010).  That is because state regulation "can be as effectively exerted through an award of damages as through some form of preventive relief," and therefore can equally interfere with federal regulatory objectives.  *See San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 247 (1959).

> **C.      Plaintiffs' Field-Preemption Arguments Mischaracterize Their Claims and the Law**

Plaintiffs do not dispute that "[p]ower over external affairs is not shared by the States; it

6

is vested in the national government exclusively." *United States v. Pink*, 315 U.S. 203, 233 (1942); Opp. 9–10. But in resisting field preemption, Plaintiffs downplay the unavoidable impact their claims would have on foreign affairs and export controls.

***Foreign-affairs preemption.*** Plaintiffs deny any foreign-affairs preemption—despite using Texas tort law to "take a position on a matter of foreign policy with no serious claim to be addressing a traditional state responsibility"—by insisting that there is "no direct impact on foreign affairs here." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003); Opp. 10. But the crux of Plaintiffs' claims is that Texas common law defines appropriate channels of international trade and which entities are too closely tied to hostile foreign governments for U.S. companies to trade with. These are foreign-policy judgments. *See* 50 U.S.C. § 4811.

Plaintiffs also portray Defendants' foreign-affairs-preemption arguments as relying solely on *Zschernig v. Miller*, 389 U.S. 429, 433 (1968), out of step with recent preemption precedents. Opp. 10. But *Zschernig* remains good law. And Plaintiffs distinguish *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 52 (1st Cir. 1999), and *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012), which Defendants cited, only by pointing out that they concern statutes and not tort claims. Opp. 10. That is immaterial. Courts have recently applied these precedents to preempt state common-law claims. *NLMK Pa.*, 592 F. Supp. 3d at 445.

Ultimately, Plaintiffs cite no case that looks anything like this one. In *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 578–79 (5th Cir. 2010), the Fifth Circuit acknowledged *Zschernig*-style preemption, but held it not to apply because the relevant international declaration "contain[ed] language noting that 'different legal traditions' should be taken into account." In *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 214 (4th Cir. 2022), plaintiffs brought environmental claims—an area of traditionally overlapping federal and state

7

regulation—and defendants had "not at all explained how common law claims under state law meaningfully 'disturb foreign relations.'" And *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 93 (D.D.C. 2014), did not implicate the "balance between state and federal authority" at all.

*Federal occupation of the export-control field.* Plaintiffs do not deny—if the field relevant here is "export controls"—that ECRA and the EAR occupy that field. Opp. 11–13. Contrary to Plaintiffs' insistence, the relevant field is not "state tort." Even in the cases on which Plaintiffs rely, the field was not defined by whether the state law was a tort. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 80 (1990) (assessing preemption in "the field of nuclear safety"); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501 (1996) (same, in "field of [medical] device regulation"); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 249 (1984) (same, for "conduct related to radiation hazards" or "nuclear safety"). The field relevant here is export controls.

III.   **PLAINTIFFS' CLAIMS FAIL AS PLEADED, UNDER TEXAS LAW**

Even if federal law permitted Plaintiffs' claims, Texas law does not. The Petitions fail to plead causation or a cognizable legal duty; seek to create a private right of action that does not exist under federal or Texas law; and suffer from other claim-specific defects. Mot. 20–32.

*Causation (All Counts).* This is a case about serious injuries and deaths—which the Russian military caused at specific times, in specific places, with specific air-strikes—but Plaintiffs do not know whether any Defendant, any Defendant's product, or any export-control violation caused their harms. *See* Opp. 17–19. That is a profound defect. Plaintiffs fail to "rule out the possibility that Plaintiffs' alleged . . . injuries resulted from another actor's actions," and they instead rely on improper "naked assertions" of causation. *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 385, 387–88 (N.D. Tex. 2022).

Plaintiffs have not plausibly alleged that specific semiconductors made or distributed by Defendants were in the actual munitions that injured them—nor do they claim to be able to do

8

so. *See* Opp. 17–18. Their only allegations on this front are conclusory. *See* Pet. ¶¶ 14, 184. Plaintiffs point to news articles reporting that some Russian munitions were recovered and examined in the past, but *none* is about the specific attacks or weapons that injured Plaintiffs. Opp. 17 (citing Pet. ¶¶ 167, 184). Plaintiffs instead rely only on generalized allegations that Russian munitions are "known to contain Western electric components including TI, AMD, and Intel chips." *Id.* (citing Pet. ¶ 184); *see also Babich* Pet. n.104 (article stating that missile was "reliant on Western components"). But Plaintiffs do not (and cannot) allege that TI, AMD, and Intel are the only companies whose semiconductors have been found in these weapons or that manufacture suitable semiconductors. *See* Mot. 31. They also do not allege that Mouser (mentioned nowhere in Plaintiffs' description of previously analyzed weapons) is the only distributor of those semiconductors. Plaintiffs' reliance on "conjecture or guess" is insufficient to plead causation. *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1044 (5th Cir. 2011) (citation omitted); *see also Johnson*, 580 F. Supp.3d at 388.

Plaintiffs also do not connect any export-control or "compliance" violation to their injuries—leaving a wide gap between their alleged injuries and the duty they rely on. Opp. 17. Plaintiffs point to five paragraphs of their Petitions: one containing a bare allegation that defendants "knew or had reason to know" that "state actors" wanted to obtain microchips (Pet. ¶ 126); one alleging—based only on parts being found in Russian munitions—that defendants "negligently" sold components in violation of sanctions against Iran (*id.* ¶ 150); and three reciting the elements of Plaintiffs' claims (*id.* ¶¶ 223, 280–81). Opp. 18. Nothing plausibly pleads an export-control or compliance violation tied to Plaintiffs' injuries.

Changing course, Plaintiffs argue that they do not have to connect specific export-control violations to the attacks that injured them, only allege that Defendants distributed products

through "channels that . . . would divert . . . components to Russia and Iran."  Opp. 18.  But Plaintiffs do not connect any such "channel" to the attacks at issue—and they simultaneously cite sources explaining that many Russian weapons use components that could have been *permissibly* distributed to Russia.  Mot. at 22–23.  The Petitions "lack sufficient factual allegations" of "a causal relation" between Defendants' acts and Plaintiffs' injuries, "much less that any [defendant's] negligent act was a substantial cause thereof."  *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 214 (5th Cir. 2010).

*Negligence (Counts 1–2, 4).*  Plaintiffs also plead no duty recognized under Texas law. Plaintiffs cite no Texas authority imposing a duty on a company to control foreign military actors abroad or to ensure that third parties do not divert products to bad actors.  Opp. 22.  Texas law is to the contrary: "[T]here is no legal duty to control the conduct of another in the absence of a special relationship."  *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 180 (5th Cir. 2018); *see also In re Academy, Ltd.*, 625 S.W.3d 19, 31 (Tex. 2021) ("no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel," even for an assault rifle). Plaintiffs instead rely on general foreseeability concepts, but foreseeability alone does not create a tort duty.  *Allen*, 907 F.3d at 180.  Plaintiffs' reliance on cases about "dangerous commodities" is similarly misplaced: this is a case about semiconductors—of the same types found in laptops and household appliances—not "explosives" or "combustible gases."  Opp. 23.  And the Budapest Memorandum (*id.* at 24 & n.6), which imposes obligations only on nation-states, does not require the U.S. to protect Ukraine or address the use of non-nuclear weapons.

Contrary to Plaintiffs' insistence (Opp. 25), the existence of a duty is a "question[] of law that courts must decide"—and one easily answered here in the negative.  *Hou. Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 582 (Tex. 2023); *see Allen*, 907 F.3d at 180 (no duty

10

of seller to prevent buyer's misuse of product); *In re Luminant Generation Co.*, 711 S.W.3d 13, 27 (Tex. App. 2023) (refusing to recognize new duty, particularly where doing so "would upend the carefully crafted framework that the Legislature has implemented").

*Negligence Per Se (Count 3).*   Neither federal law nor Texas law supports Plaintiffs' negligence-per-se claim.   Mot. 23–25, 27–29; Opp. 28.   Texas disfavors negligence-per-se claims, *Trevino v. Ortega*, 969 S.W.2d 950, 951–52 (Tex. 1998), having "created a new duty by applying negligence per se on only one occasion," *Martinez v. Walgreen Co.*, 935 F.3d 396, 403 n.33 (5th Cir. 2019).   Here, Congress not only "decline[d] to provide for a private right of action" to enforce export-control and sanctions laws, it also "provide[d] a comprehensive regulatory scheme" with enforcement powers afforded only to the federal government.   *Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:21-CV-981-L, 2022 WL 902735, at *5 (N.D. Tex. Mar. 28, 2022) (cleaned up).   "Texas courts applying Texas law have consistently rejected negligence per se claims based on [federal] statutes that do not include private rights of action but include government-enforcement schemes."   *In re New Era Enters. Inc. Data Incident Litig.*, No. H-25-732, 2026 WL 303547, at *12 (S.D. Tex. Feb. 4, 2026).   This line of authority forecloses Plaintiffs' claims.

Plaintiffs distinguish *Walters*, 2022 WL 902735, and *Armstrong v. Southwest Airlines Co.*, No. 3:20-cv-3610, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021), by characterizing them as cases in which "there was not also a common-law negligence claim."   Opp. 21–22.   But that is irrelevant.   Neither case assigned weight to the absence of parallel negligence claims, and whether to recognize a negligence-per-se claim is a question of *legislative* intent, not artful pleading.   *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 726 (S.D. Tex. 2025).

*Aiding and Abetting (Count 6).*   As the Northern District of Texas has held, *Nettles v.*

11

*GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020), did not recognize a civil aiding-and-abetting claim under Texas law. *See* Opp. 28. *Nettles* resolved the case before reaching the merits, based on sovereign immunity. *Cruden Bay Holdings, LLC v. Jezierski*, No. 3:21-CV-01170-E, 2022 WL 447080, at *4–5 (N.D. Tex. Feb. 14, 2022). "Texas law on the issue . . . has not changed since the Fifth Circuit's *DePuy* decision[.]" *Id.* at *5. That is: "no such claim exists in Texas." *In re DePuy Orthopedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782 (5th Cir. 2018). And even if it did, Plaintiffs have not pleaded necessary facts to show that Defendants "sought by their actions to make [any Russian attack] succeed," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 474 (2023), or took "steps to 'promote' any resulting crime," *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025).

*Fraudulent Nondisclosure (Count 7).* Plaintiffs admit that they must allege that Defendants "intended *the plaintiff* to act or refrain from acting based on [its] nondisclosure" and "*the plaintiff* relied on the non-disclosure, which resulted in injury." Opp. 29 (emphases added). But they do not plead a nondisclosure upon which any Plaintiffs relied, let alone that Defendants intended them to do so. Plaintiffs also have not pleaded any duty of disclosure Defendants owe to Plaintiffs, none of whom had an existing relationship with Defendants. *Roxo Energy Co. v. Baxsto, LLC*, 713 S.W.3d 404, 411 (Tex. 2025). Plaintiffs also do not satisfy Rule 9(b)'s pleading requirements, because they do not "identify with specificity" what statements by Defendants "allegedly gave rise" to any duty to disclose. *Tornado BUS Co. v. BUS & Coach Am. Corp.*, No. 3:14-cv-3231-M, 2015 WL 11120584, at *5 (N.D. Tex. Dec. 15, 2015); Mot. 30.

*Joint Enterprise (Count 8).* Plaintiffs' opposition ignores a fundamental defect with their joint-enterprise claim: It relies on violations of federal laws with no private right of action. *See* Mot. 25–27. Plaintiffs concede that the Petitions "do[] not state a claim for conspiracy," but

12

overlook that the same defect applies to their joint-enterprise claim. Opp. 27 n.7. Regardless, Plaintiffs' joint-enterprise claim merely "offer[s] a formulaic recitation of the elements of joint enterprise liability devoid of factual support." *In re Parkcentral Glob. Litig.*, No. 3:09-CV-0765-M, 2010 WL 3119403, at *10 (N.D. Tex. Aug. 5, 2010). Plaintiffs allege no facts plausibly supporting that benefits are "held in 'community'" or "shared [among Defendants] 'without special or distinguishing characteristics,'" *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 528 (Tex. 2002) (citation omitted); that each Defendant "ha[s] an equal right of control over the enterprise," *id.*; or that Defendants "'shared financial resources, pooled funds, or [made] joint monetary investments in the enterprise,'" *Allred v. Freestone Cnty. Fair Ass'n, Inc.*, No. 07-20-00168-CV, 2022 WL 1153152, at *11 (Tex. App. Apr. 18, 2022) (citation omitted).

***Wrongful Death and Survival (Counts 9, 10).*** An heir can pursue a survival claim only if she alleges facts to show no estate administration is needed—for example, if she is the "estate's sole beneficiary and there are no creditors." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016). Otherwise, a single heir could commandeer a survival claim, to the detriment of others. *McPeak-Torres v. Brazoria Cnty. Tex.*, 2014 WL 12591850, at *4 (S.D. Tex. Nov. 5, 2014). Plaintiffs have not alleged such facts—and Tsvitok admits she is not a proper plaintiff for a survivorship claim (Opp. 31 n.8)—so their claims must be dismissed.

***All Derivative Claims (Counts 5–6, 8–10).*** Plaintiffs concede that their derivative-liability claims fail if the underlying substantive tort claims fail—and Plaintiffs have even withdrawn their conspiracy claim. Opp. 27–28, 30–31. Because Plaintiffs' substantive claims all fail for the reasons explained above, so too do their derivative-liability claims. *See Nettles*, 606 S.W.3d at 738 (conspiracy/aiding-and-abetting); *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345–47 (Tex. 1992) (survival/wrongful death); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473

13

S.W.3d 518, 536 (Tex. App. 2015) (conspiracy/joint enterprise).

## IV.    ALL CLAIMS BROUGHT BY THE *TERESCHENKO*, *ZAPLYVANYI*, AND *BABICH* PLAINTIFFS ARE TIME-BARRED

Plaintiffs cannot avoid the two-year statute of limitations that applies to their claims.  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling[.]" *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  *But see* Opp. 32.

Plaintiffs' lead argument—that the foreign war in Ukraine tolled the limitations period in Texas—misconstrues the "very limited" nature of the war-based tolling, which tolls a limitations period only for suits brought by "a citizen of a country at war with the United States." *Amy v. City of Watertown*, 130 U.S. 320, 323–24 (1889); *see also* 31 Williston on Contracts § 79:71 (4th ed.).  It does not apply in a suit, like this one, brought by citizens of one foreign country at war with another.  Each case Plaintiffs cite arose in the aftermath of the U.S. Civil War, where American courts and the American legal system were dysfunctional—justifying tolling for plaintiffs who could not use those courts.  The Texas legislature similarly suspended limitations periods "until one year after the close of the war" between the Confederate States and the United States.  Opp. 32; *Grigsby v. Peak*, 57 Tex. 142, 150 (1882); *Moseley v. Lee*, 37 Tex. 479, 481 (1872); *see also Sickels v. Epps*, 8 S.W. 124, 128 (Tex. 1888) (same).  This was because of disruptions to the legal system *in Texas*.  *See Cox v. Robison*, 105 Tex. 426, 436–37 (1912).  Plaintiffs identify no authority supporting tolling when a foreign citizen, living in a foreign country at war with another foreign country, sues U.S. defendants here—in courts suffering no disruption at all.

Plaintiffs' back-up argument—that the discovery rule means their claims accrued only when the Senate released its report in September 2024—runs contrary to their own allegations

14

that "[t]he diversion of Defendants' semiconductors to facilitate Russia's military attacks on Ukraine civilians has been well known by . . . the international community for years." *Tereschenko* Pet. ¶ 171.  In the same paragraph, the Petition cites a January 2023 article making the same allegations.  *See id.* at p. 71 (citing January 26, 2023 article, "How Russia Is Using U.S. Electronics to Attack Ukraine"); *see also id.* ¶ 147 n.55 (citing January 2023 CNN report).  The discovery rule asks whether Plaintiffs "in the exercise of reasonable diligence should have known of the wrongful act and resulting injury," not whether Plaintiffs actually saw specific reports.  *McGowan v. S. Methodist Univ.*, 715 F. Supp. 3d 937, 947 (N.D. Tex. 2024) (cleaned up).  Here, Plaintiffs knew of their injuries—and should have known of the alleged wrongful acts—by January 2023.

Finally*,* Plaintiffs' "fraudulent concealment" theory fails.  Fraudulent concealment requires a "duty to disclose" information or an affirmative misrepresentation "with the intent that [the plaintiff] should act on it."  *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 409 (Tex. App. 2014).  Plaintiffs have not alleged that.  And fraudulent concealment—like the discovery rule—ends tolling when the alleged fraud "could have been discovered with reasonable diligence."  *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).

Because no tolling doctrine applies, the two-year statute of limitations bars all of the *Tereschenko*, *Zaplyvanyi*, and *Babich* Plaintiffs' claims.

## V.    CONCLUSION

Neither federal law nor Texas state law permits Plaintiffs' claims, which use Texas tort law to regulate foreign relations and to hold American semiconductor companies responsible for Russian military air-strikes on Ukraine.  The Court should dismiss Plaintiffs' Petitions.

15

Dated: May 11, 2026

Respectfully submitted,

_L. Ashley Aull_
L. Ashley Aull

Gregory P. Stone*
L. Ashley Aull*
David T. Ryan*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100
Fax:  (213) 687-3702
Gregory.Stone@mto.com
Ashley.Aull@mto.com

Helen E. White*
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100
Fax: (202) 220-2300
Helen.White@mto.com

Jeff Tillotson (SBN 20039200)
TILLOTSON, JOHNSON & PATTON LLP
1201 Main St., Suite 1300
Dallas, TX 75202
Telephone: (214) 382-3040
jtillotson@tillotsonlaw.com

**ATTORNEYS FOR DEFENDANT
INTEL CORP.**

/s/ Eliot T. Burriss
Eliot T. Burriss (SBN 2404611)
Zack M. McConnell (SBN 24143181)
FAEGRE DRINKER BIDDLE & REATH
LLP
2323 Ross Ave., Suite 1700
Dallas, TX 75201
Telephone: (469) 357-2500
Fax:  (469) 327-0860
Eli.Burriss@faegredrinker.com
Zack.McConnell@faegredrinker.com

16

**ATTORNEYS FOR DEFENDANT
MOUSER ELECTRONICS, INC.**

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer (SBN 13922550)
Rex Mann (SBN 24075509)
KING & SPALDING LLP
2601 Olive St., Suite 2300
Dallas, TX 75201
Telephone: (214) 764-4600
Fax: (214) 764-4601
tmelsheimer@kslaw.com
rmann@kslaw.com


**ATTORNEYS FOR DEFENDANT
TEXAS INSTRUMENTS
INCORPORATED**

*/s/ Anna G. Rotman, P.C.*
Anna G. Rotman, P.C. (SBN 24046761)
KIRKLAND & ELLIS LLP
609 Main St.
Houston, TX 77002
Telephone: (713) 836-3600
Fax: (713) 836-3601
Anna.Rotman@kirkland.com

Jordan L. Greene*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-3067
Fax: (202) 389-5200
Jordan.Greene@kirkland.com

McKenzie Aston
State Bar No. 24137433
KIRKLAND & ELLIS LLP
4550 Travis St.
Dallas, TX 75205
Telephone: (214) 972-1770
Fax: (214) 972-1771
McKenzie.Aston@kirkland.com

17

**ATTORNEYS FOR DEFENDANT
ADVANCED MICRO DEVICES, INC.**

*Pro hac vice

18

**CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on May 11, 2026, per Local Rule 5.1(e).

/s/ L. Ashley Aull
L. Ashley Aull


**CERTIFICATE OF WORD COUNT AND COMPLIANCE**

I certify that the foregoing document contains 4,874 words, excluding case caption, signature block and certificates. The brief contains less than 15 pages of argument, consistent with the Court's March 19, 2026 order granting leave to exceed page limits. (ECF No. 48.)

/s/ L. Ashley Aull
L. Ashley Aull

19