IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARTA SHUMYLO, et al., | § | |
| | § | Civil Action No. 3:25-CV-3400-D |
| Plaintiffs, | § | (Consolidated for Pretrial Purposes |
| | § | Only With Civil Action Nos. |
| VS. | § | 3:25-CV3402-D; 3:25-CV-3403-D; |
| | § | 3:25-CV-3406-D; and |
| TEXAS INSTRUMENTS | § | 3:25-CV-3416-D) |
| INCORPORATED, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by or on behalf of Ukranian citizens injured or killed by Russian military

air strikes, the U.S. defendant manufacturers, suppliers, and distributors of components

allegedly used in the Russian munitions move to dismiss under Fed. R. Civ. P. 12(b)(6),

principally presenting the questions whether the plaintiffs' state-law tort claims are federally

preempted and whether plaintiffs have plausibly pleaded causation. Concluding that

plaintiffs' claims are not federally preempted but that they have failed to plausibly plead

causation, and that other grounds support dismissal of specific claims, the court grants

defendants' motion to dismiss and also grants plaintiffs leave to replead. "The facts of this

case are tragic. But tragic facts alone do not establish liability . . . ." *Tuttle v. Gallegos*, ___

F.4th ___, 2026 WL 1861047, at *1 (5th Cir. June 29, 2026).

I

This is a removed action brought by or on behalf of several Ukranian citizens against

defendants Texas Instruments Incorporated ("TI"), Advanced Micro Devices, Inc. ("AMD"),

Intel Corporation ("Intel"), and Mouser Electronics, Inc. ("Mouser").[1]  TI, AMD, and Intel

are U.S. companies that manufacture and sell semiconductors.  Mouser is a U.S. company

that sells and distributes semiconductors.  Plaintiffs are Ukranian citizens who were injured

or killed, or whose relatives were injured or killed, in Russian military air strikes that

occurred in various Ukranian cities between March 2023 and April 2025.  According to

plaintiffs' amended complaints ("complaints"), "[u]pon information and belief, Defendants'

products were found in weapons used in specific attacks that injured or killed Plaintiffs."

Am. Compl. (ECF No. 77) ¶ 202.[2]

In December 2025 plaintiffs filed suit in a Dallas County court, alleging state-law

claims for negligence, negligence per se, gross negligence, aiding and encouraging tortious

conduct, fraudulent concealment by nondisclosure, and a joint enterprise.[3]  Although

plaintiffs initially opposed removal to this court, they withdrew their motions to remand.

Defendants now move to dismiss all of plaintiffs' claims under Rule 12(b)(6) for failure to

---

[1]In deciding defendants' Rule 12(b)(6) motion to dismiss, the court construes the amended complaints in the light most favorable to plaintiffs, as the nonmovants, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[2]As do the parties in their briefing, the court refers primarily to the *Shumylo* complaint.

[3]Plaintiffs also brought a conspiracy claim that they have since withdrawn.

state a claim on which relief can be granted.[4]  Plaintiffs oppose the motion.  The court has

heard oral argument.[5]

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of

plaintiffs' amended complaint[s] by 'accept[ing] all well-pleaded facts as true, viewing them

in the light most favorable to the plaintiff[s].'"  *Bramlett v. Med. Protective Co. of Fort*

*Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration

in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*,

550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

---

[4]Defendants also move to stay discovery, and plaintiffs move to compel Intel, AMD, and Mouser to produce documents.  In view of today's decision, the court grants the motion to stay discovery and denies without prejudice the motion to compel.

[5]Intel submitted supplemental authority on June 30, 2026, to which plaintiffs responded on July 1, 2026.  In light of the reasoning set out in this memorandum opinion and order, the court need not specifically address these filings.

-3-

speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III

Defendants first contend that federal law preempts plaintiffs' claims.

## A

"Federal preemption is an affirmative defense that a defendant must plead and prove." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012). "The doctrine of preemption stems from the Supremacy Clause, which gives federal law precedence over a conflicting state law." *Mosure v. Sw. Airlines, Co.*, 2024 WL 3625673, at *3 (N.D. Tex. July 31, 2024) (Scholer, J.) (quoting *White Buffalo Ventures, LLC v. Univ. of Tex. at Aus.*, 420 F.3d 366, 370 (5th Cir. 2005)).

Preemption can be express or implied. *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018). Implied preemption is divided into two types: field preemption and conflict preemption. *Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 328 (5th Cir. 2025). "[F]ield preemption occurs when 'Congress creates a scheme of federal regulation so pervasive as to leave no room for supplementary state regulation.'" *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 109 (1992) (Kennedy, J., concurring)). "[C]onflict

preemption occurs 'where it is impossible for a private party to comply with both state and federal requirements,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Gade*, 505 U.S. at 109).

The Export Controls Act of 2018 ("ECA"), 50 U.S.C. §§ 4801-4826, provides the executive with, among other things, the authority to control "the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States." *Id.* § 4812(a)(1). The Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-74, which were primarily designed to implement the ECA's predecessor, *id.* § 730.2, cover "[a]ll items in the United States" and "[a]ll U.S. origin items wherever located," *id.* § 734.3(a)(1)-(2). The Bureau of Industry and Security ("BIS") promulgates the EAR. *Id.* § 730.1. Prior to the enactment of the ECA, the executive at times would rely on the International Emergency Economic Powers Act to "direct[] and authorize[] the continuation in force of the EAR." *Id.* § 730.2. When enacting the ECA, Congress statutorily endorsed the EAR. *See* 50 U.S.C. § 4826(a). Defendants contend that this federal export control regime bars plaintiffs' claims under theories of field and conflict preemption.

## B

The court turns first to field preemption.[6] The Supreme Court "has indicated courts

---

[6]Defendants also rely on the Supreme Court's decision in *Zschernig v. Miller* to contend that plaintiffs' claims are preempted. In *Zschernig* the Supreme Court considered an Oregon statute that allowed property claimed by non-citizens to escheat to the state unless certain conditions were satisfied. *Zschernig v. Miller*, 389 U.S. 429, 430-31 (1968). The

should hesitate to infer field preemption unless [defendants] show 'that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress.'" *City of El Cenizo*, 890 F.3d at 176 (internal quotation marks omitted) (quoting *De Canas v. Bica*, 424 U.S. 351, 357 (1976)). Ultimately, to establish field preemption, defendants "must prove that federal law evinces 'the clear and manifest purpose of Congress' to preclude even complementary state [tort actions] on the same subject." *Id.* at 178 (quoting *De Canas*, 424 U.S. at 357). And "where, as in this case, Congress has entrusted an agency with the task of promulgating regulations to carry out the purposes of a statute, as part of the pre-emption analysis [the court] must consider whether the regulations evidence a desire to occupy a field completely." *R.J. Reynolds Tobacco Co. v. Durham County, N.C.*, 479 U.S. 130, 149 (1986) (citation omitted).

Defendants have not established that plaintiffs' negligence claim is preempted. The negligence claim is premised on an alleged duty defendants owed in exercising reasonable care to design, implement, and supervise their compliance programs. The ECA does provide the executive the authority to establish requirements for compliance with export controls and to approve standards for compliance. *See* 50 U.S.C. §§ 4812(b)(7), 4814(b)(2)(D). But as plaintiffs noted at oral argument, it does not appear that the executive has exercised this

---

Court held that this statute impermissibly intruded into foreign affairs, explaining that the statute had led state courts "into minute inquiries concerning the actual administration of foreign law" and "into the credibility of foreign diplomatic statements." *See id.* at 435-36. Defendants have not demonstrated that plaintiffs' tort claims would result in a comparable degree of disruption to foreign relations.

authority to extensively regulate on issues related to the compliance regimes of domestic manufacturers and distributors.  In the absence of a pervasive regulatory scheme covering the standards for compliance regimes, the court is unable to infer a Congressional intent to oust plaintiffs' type of negligence claim.  *See AbbVie, Inc. v. Fitch*, 152 F.4th 635, 646 (5th Cir. 2025) (per curiam) (explaining that "'matters left unaddressed' in an otherwise 'comprehensive and detailed' federal regulatory scheme 'are presumably left subject to the disposition provided by state law.'" (quoting *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994)); *cf. Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 65 (2002) (concluding that coast guard's decision not to adopt a regulation did not support finding preemption).

Field preemption likewise does nor bar the remainder of plaintiffs' tort claims. Defendants maintain that the executive has exercised its broad discretion to establish a complex set of regulatory requirements, leaving no room for plaintiffs' tort claims.  The "mere existence" of a detailed regulatory scheme,  however, "does not by itself imply preemption of state remedies."  *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990); *see also Hillsborough County. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717-18 (1985) (justifying a reluctance to infer preemptive intent from the comprehensiveness of regulations based in part on the "variety of means, including regulations, preambles, interpretive statements, and responses to comments" through which agencies can "make their intentions clear if they intend for their regulations to be exclusive").

Turning to the text of the relevant laws and regulations, both sides identify language

that they maintain supports their position.  On the one hand, defendants cite the example of § 734.2(a)(2) of the EAR as "significant evidence of preemptive intent."  D. Br. (ECF No. 50) 13.  Section 734.2(a)(2) explains that the federal agencies try to minimize overlapping federal regulatory jurisdictions.  *See* 15 C.F.R. § 734.2(a)(2).  According to defendants, it follows that federal law would also seek to minimize overlapping state tort regimes.

On the other hand, plaintiffs identify § 764.3(a) of the EAR, which provides that violations of export control law "are subject to the administrative sanctions described in this section and to any other liability, sanction, or penalty available under law."  15 C.F.R. § 764.3(a).  The phrase "any other liability . . . available under the law," *id.*, could encompass state tort law.  *See* Liability, Black's Law Dictionary 1095 (12th ed. 2024) (defining liability as a "legal responsibility to another . . . enforceable by civil remedy" and providing "injuries caused by negligence" as an example).  Both sides identify additional language that, like the examples discussed here, are equivocal as to whether Congress intended to preempt tort claims.  Moreover, the court notes that the Anti-Boycott Act of 2018, 50 U.S.C. §§ 4841-4843, which was passed alongside the ECA[7] and is presently codified within the same title and chapter,[8] contains clear language preempting state law.  *See id.* § 4842(c).  Congress'

---

[7]Both acts were passed as part of the John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, 132 Stat. 2209, 2234.

[8]Two additional aspects of the Anti-Boycott Act of 2018 suggest that drawing comparisons between it and the ECA is appropriate.  First, like the ECA, it appears that the Anti-Boycott Act of 2018's predecessor was the Export Administration Act of 1979.  *See* Export Administration Act of 1979, Pub. L. No. 96-72, § 8, 93 Stat. 503, 521-24 (foreign boycott provisions).  Second, the regulations implementing the Anti-Boycott Act of 2018 are

choice to clearly preempt state law in the Anti-Boycott Act of 2018 suggests that the court should hesitate before finding that the ECA impliedly ousts plaintiffs' tort claims. *See Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (cautioning against wielding implied preemption in a manner that "would undercut the principle that it is Congress rather than the courts that pre-empts state law"); *cf. Wis. Cent. Ltd v. United States*, 585 U.S. 274, 278-79 (2018) (interpreting statute by comparing it to another statute codified in the same title and passed around the same time). Based on this mixed evidence, the court is unable to infer a Congressional intent to preclude plaintiffs' tort claims. *See Mosure*, 2024 WL 3625673, at *5 (declining to find field preemption where defendant "has not identified, and the Court has not found, a regulation that clearly and manifestly demonstrates that [regulated entities] are immune from" plaintiffs' type of tort claim). The court therefore holds that defendants have failed to prove that plaintiffs' claims are field preempted.

C

The court turns next to conflict preemption. State law will be preempted where it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 528 (5th Cir. 2013) (en banc).[9] "But conflict preemption is not triggered by ordinary incongruities or minor annoyances, only by 'unacceptable obstacle[s].'" *Barrosse v.*

---

part of the EAR. *See* 15 C.F.R. § 730.1.

[9]Defendants do not contend that it would be impossible to comply with both plaintiffs' tort claims and federal law.

*Huntington Ingalls, Inc.*, 70 F.4th 315, 323 (5th Cir. 2023) (alteration in original) (quoting

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200 (5th Cir. 2013));

*see also Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9, 40 (1st Cir. 2019) (suggesting that

obstacle preemption requires evidence of a "significant conflict" (quoting *Boyle v. United*

*Techs. Corp.*, 487 U.S. 500, 507 n.3 (1988)).

Defendants contend that plaintiffs' tort claims are preempted because they "interfere

with" or "skew" the executive's enforcement of federal export control laws. D. Br. (ECF No.

50) 17. Defendants maintain that the tort claims are "state-law mechanisms to enforce and

penalize violations of" federal export control laws and that federal agencies "have ample

authority" to enforce these laws. *Id.* at 16-17. But "the possibility that federal enforcement

priorities might be upset is not enough to provide a basis for preemption." *Kansas v. Garcia*,

589 U.S. 191, 212 (2020). *Crosby v. Nat'l Foreign Trade Council*, for example, involved

more than a mere possibility that the executive's authority would be upset. *Crosby*

considered a Massachusetts law that prohibited state entities from purchasing goods or

services from any person doing business with Burma. *Crosby v. Nat'l Foreign Trade*

*Council*, 530 U.S. 363, 366-67 (2000). The state law's sanctions were "immediate" and

"perpetual." *Id.* at 376-77. By contrast to this "unyielding application," federal law provided

the executive with broad discretion to determine the scope and application of sanctions

against Burma. *Id.* at 377. Defendants also cite *Buckman Co. v. Plaintiffs' Legal Comm.*

But the plaintiffs' claim in *Buckman* sought only to police the defendant's alleged fraud on

the Food and Drug Administration ("FDA"). *See Buckman Co. v. Plaintiffs' Legal Comm.*,

531 U.S. 341, 347-48 (2001).  Moreover, the Court reasoned that allowing this type of "fraud-on-the-FDA" claim to proceed would result in FDA applicants submitting a "deluge of information that the Administration neither wants nor needs, resulting in additional burdens on the FDA's evaluation of an application." *Id.* at 351.  Here, defendants have not established that there are comparable features of plaintiffs' tort claims that would undermine the executive's authority.

Defendants have also identified particular ways in which the tort claims diverge from federal law.  The strongest pertinent argument that defendants advance is related to § 744.21 of the EAR and plaintiffs' negligence claim.  Section 744.21 prohibits the export of items subject to the EAR if the party has "knowledge . . . that the item is intended, entirely or in part, for a military end use . . . in Belarus or Russia, or a Belarusian or Russian military end user."  15 C.F.R. § 744.21(a)(2) (internal quotation marks omitted).  The EAR defines knowledge to include "not only positive knowledge" that a circumstance exists but also "an awareness of a high probability of its existence or future occurrence."  *Id.* § 772.1.  Defendants maintain that negligence only requires evidence of what a party "should have known."  D. Br. (ECF No. 50) 19 (quoting *Mullins v. McWhirter*, 724 S.W.3d 571, 583 (Tex. App.—Eastland 2025)).  Defendants posit that the inconsistency between these two standards undermines the Congressional calibration of force.  *See Crosby*, 530 U.S. at 380 ("Sanctions are drawn not only to bar what they prohibit but to allow what they permit, and the inconsistency of sanctions here undermines the congressional calibration of force.").

Defendants' position finds support in caselaw.  In *Crosby* the preempted state law

-11-

prohibited certain conduct that was "explicitly exempted" under federal law and penalized some conduct and persons that federal law plainly did not reach. *See id.* at 378-79. Moreover, *Villas* considered whether a city ordinance conflicted with a federal law that made it a felony for any person,"knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to "conceal[], harbor[], or shield [] from detection . . . such alien in any place, including any building." *Villas*, 726 F.3d at 529 (alterations in original) (citation omitted). By contrast, the city ordinance penalized landlords for renting an apartment to non-citizens not lawfully present, regardless whether the landlord acted in knowing or reckless disregard of the non-citizen's violation of federal law. *Id.* at 530. The court concluded that the ordinance stood as an obstacle to the federal law. *See id.* at 529-31. As in *Crosby* and *Villas*, plaintiffs' negligence claim could impose liability on some conduct that the EAR's knowledge standard otherwise would not.

The incongruity between the negligence standard and the EAR's knowledge standard, however, does not appear to be as sharp as the conflicts identified in *Crosby*, *Villas*, or the other cases on which defendants rely.[10] It is also not apparent how this inconsistency would obstruct the objectives and purposes of Congress. For example, in *Villas* the court pointed to other provisions of federal law to illustrate how the inconsistency at issue would obstruct

---

[10]For example, the BIS has explained in the past, when revising the EAR, that knowledge "encompasses actual knowledge and *reason to know*." Revisions and Clarification of Export and Reexport Controls for the People's Republic of China, 72 FR 33646-01, 33649 (June 19, 2007) (emphasis added). The difference between "reason to know" and "should have known" is likely insufficient to trigger conflict preemption.

Congress' goal of bringing potentially removable non-citizens to the attention of federal authorities. *See Villas*, 726 F.3d at 530-31. Or in *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta* the Court concluded that a state law that limited some activity posed an obstacle to a federal regulation that permitted, but did not compel, that same activity. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154-56 (1982). There, the Court observed that the agency had stated in its regulations that it "desire[d] to afford [regulated entities] the flexibility to accommodate special situations and circumstances." *Id.* at 155. Here, the court is without similar textual evidence indicating how the inconsistency between the negligence standard and the EAR's knowledge standard would obstruct the broad policy goals identified in § 4811 of the ECA. *See Whiting*, 563 U.S. at 607 ("Implied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives . . . ." (internal quotation marks omitted)).[11]

Accordingly, the court concludes that defendants have failed to prove that plaintiffs'

---

[11]The other differences that defendants identified between federal law and the tort claims are unavailing for similar reasons. Defendants identify some additional obligations that the tort claims may impose beyond what federal law requires, but have not adequately explained how these additional obligations create an unacceptable obstacle to the purposes and objectives of Congress. *See Shen v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 158 F.4th 1227, 1265 (11th Cir. 2025) (declining to find preemption where, "[a]t most," contested state-law "complement[ed] the federal foreign investment review regime"). Likewise, the differences in remedies available under state tort law and federal law do not amount to an unacceptable obstacle. *See Zyla Life Scis., L.L.C.* F.4th at 335 ("State law often provides remedies federal law does not." (citing *California v. ARC Am. Corp.*, 490 U.S. 93 (1989)).

tort claims are conflict preempted.[12]

IV

The court now considers whether defendants have demonstrated that plaintiffs have failed to plead plausible claims on which relief can be granted.

A

The court first addresses whether plaintiffs have plausibly alleged causation, an essential element of each of plaintiffs' tort claims. Defendants contend that plaintiffs have not plausibly pleaded that any particular defendant's semiconductor was present in a weapon that caused their injuries and that there is a significant gap between defendants' conduct and plaintiffs' injuries. Plaintiffs respond that they have alleged on information and belief that defendants' products were found in the weapons that caused the injuries and that the factual allegations in the complaints provide an adequate basis for this belief.

The court concludes that plaintiffs have failed to plausibly plead causation. A defendant's conduct is the cause in fact of a plaintiff's injury if the defendant's "act or omission was a substantial factor in bringing about the injuries, and without it, the harm

---

[12]The parties also contest whether the presumption against preemption applies. This presumption applies in areas traditionally regulated by the states. On the one hand, "[t]ort law has historically been left to the states." *Mosure*, 2024 WL 3625673, at *5 (quoting *Rogers v. Ray Gardner Flying Serv., Inc.*, 435 F.2d 1389, 1394 (5th Cir. 1970)); *see also Morris v. Cessna Aircraft Co.*, 833 F. Supp. 2d 622, 630 (N.D. Tex. 2011) (Lynn, J.) (finding that presumption against preemption applied where plaintiffs' claims sought "to impose general duties on all product manufacturers and designers"). On the other hand, plaintiffs' tort claims implicate issues related to foreign affairs, an area traditionally not regulated by the states. But the court need not resolve whether the presumption applies because federal law fails to preempt the tort claims even without the application of this presumption.

-14-

would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143

S.W.3d 794, 799 (Tex. 2004). The complaints cite sources that explain that defendants'

components have been found in Russian weapons. Yet these sources also show that Russian

weapons have been found to contain components from numerous other companies located

in and outside the United States. Plaintiffs' contention that this is an argument for the jury

is unavailing. At the pleading stage, the court may consider "obvious alternative

explanation[s]." *See Twombly*, 550 U.S. at 567. Because plaintiffs' sources show that

components from various other companies have been found in Russian weapons, the fact that

defendants' components have also been found in Russian weapons is "merely consistent

with" their liability and "stops short of the line between possibility and plausibility." *See id.*

at 557; *see also Johnson v. Tyson Foods, Inc.*, 580 F.Supp.3d 382, 388 (N.D. Tex. 2022)

(Kacsmaryk, J.) (granting motion to dismiss where complaint did "not rule out the possibility

that Plaintiffs' alleged [] injuries resulted from another actor's actions"), *aff'd*, 2023 WL

2645553 (5th Cir. Mar. 27, 2023) (per curiam).

Moreover, "even if the injury would not have happened but for the defendant's

conduct, the connection between the defendant and the plaintiff's injuries simply may be too

attenuated to constitute legal cause." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d

472, 477 (Tex. 1995). For example, in *Ambrosio v. Carter's Shooting Ctr., Inc.* a customer

stole a handgun from an unlocked display case in a gun store while the store attendants were

distracted. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 264 (Tex.

App.—Houston [14th Dist.] 2000, pet. denied). The handgun was ultimately used in a

murder. *Id.* at 268. "The crime in which the gun was used occurred at least two weeks after the gun was stolen, occurred in a different county, and was committed by someone other than the original thief." *Id.* at 268-69. The court held that the gun store's conduct was "too remote and attenuated from the criminal conduct . . . to constitute a legal cause of injury to either [the victim] or his parents." *Id.* at 266. In the present case, plaintiffs allege that defendants sold and distributed components at an unspecified time, directly or indirectly, to unknown state actors and/or companies located in various countries who used these components to create weapons that were then supplied to Russia and ultimately used to harm plaintiffs in Ukraine. Similar to *Ambrosio*, defendants' conduct is "far too attenuated from any alleged injury to [plaintiffs] to be a substantial factor in bringing about such harm." *See Pittsburgh Logistics Sys., Inc. v. Berberick*, 2022 WL 614996, at *3 (N.D. Tex. Mar. 2, 2022) (Lindsay, J.) (emphasis omitted); *see also Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) ("Under Texas law, a cause of action is legally insufficient if the defendant's alleged conduct did no more than furnish the condition that made the plaintiff's injury possible."). Accordingly, the court grants defendants' motion to dismiss all of plaintiffs' claims based on plaintiffs' failure to plausibly plead causation.

B

The court next considers defendants' contention that plaintiffs have failed to plead a cognizable duty supporting their negligence and gross negligence claims. "Foreseeability is a 'prerequisite to imposing a duty.'" *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 101 (Tex. 2017) (quoting *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756

(Tex. 1998)). "As a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control." *LaFleur v. Astrodome-Astrohall Stadium Corp.*, 751 S.W.2d 563, 564 (Tex. App.—Houston [1st Dist.] 1988) (first citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987); and then citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 550 (Tex. 1985)); *see also Poole*, 732 S.W.2d at 313 (explaining, in the context of foreseeability, that a third party's criminal conduct generally extinguishes the negligent actor's liability). Plaintiffs do not plausibly plead that the Russian military's harming of Ukranian civilians was done under defendants' supervision or control. "An exception to this rule exists when criminal conduct is the foreseeable result of a tortfeasor's negligence." *LaFleur*, 751 S.W.2d at 564. Defendants maintain that plaintiffs have alleged nothing to justify departing from the general rule. Plaintiffs respond that their factual allegations establish that the risk that a third party would use defendants' components to harm Ukranian civilians was foreseeable.

The court concludes that plaintiffs have not plausibly pleaded that the third-party conduct that harmed them was a foreseeable result of defendants' negligence. Whether a third party's criminal conduct was foreseeable turns on what defendants "realized or should have realized" at "the time of [their] negligent conduct." *Nixon*, 690 S.W.2d at 550 (emphasis omitted) (quoting Restatement (Second) of Torts § 448 (1965)). The complaints do not—on information and belief or otherwise—plead sufficient factual allegations for the court to reasonably infer *when* the negligent conduct that caused the plaintiffs' injuries occurred. One of the sources that plaintiffs rely on, for example, identified a Russian weapon

containing TI chips that were manufactured more than 30 years ago. Am. Compl. (ECF No. 77) ¶ 186 (citing David Gauthier-Villars et al., *As Russian missiles struck Ukraine, Western tech still flowed*, Reuters (Aug. 8, 2022)). Obviously, whether the relevant conduct occurred 30 years ago, 10 years ago, or 3 years ago would impact the reasonable inferences that the court could draw regarding what defendants realized or should have realized. Without sufficient factual details to reasonably infer *when* defendants might have placed into the streams of commerce the components that allegedly harmed plaintiffs, the court can do no more than speculate about whether the third party criminal conduct was foreseeable. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005) (noting that foreseeability "cannot be established by mere conjecture, guess, or speculation"); *cf. Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 131 (Tex. App.—Corpus Christi 1997, pet. denied) (assessing at time of sale whether defendant acted "unreasonably in selling ammunition" to third party that caused injury). Therefore, the court grants defendants' motion to dismiss plaintiffs' negligence and gross negligence claims for failure to plead a cognizable duty.

C

The court next addresses pleading defects that are specific to certain of plaintiffs' individual claims.

1

Plaintiffs' fraudulent concealment by nondisclosure claim fails because essential elements of the claim are supported by nothing more than "[t]hreadbare recitals of the elements of [this] cause of action." *Iqbal*, 556 U.S. at 678. For example, plaintiffs have

failed to allege any factual content that, taken as true, would enable the court to reasonably infer that defendants intended plaintiffs to act or refrain from acting based on their alleged non-disclosure or that plaintiffs relied on the alleged non-disclosure. *See Woodson v. City of Dallas*, 2026 WL 719642, at *5 (N.D. Tex. Feb. 12, 2026) (Rutherford, J.) (explaining that a claim for fraudulent non-disclosure requires plaintiff to plead these elements), *rec. adopted*, 2026 WL 717255 (N.D. Tex. Mar. 13, 2026) (Fish, J.).

2

The joint enterprise claim fails because plaintiffs have not plausibly pleaded a community of pecuniary interest. *See Morris v. Cessna Aircraft Co.*, 833 F.Supp.2d 622, 644 (N.D. Tex. 2011) (Lynn, J.) (identifying community of pecuniary interest in a common purpose as an essential element of a joint enterprise claim). According to plaintiffs, the manufacturers—TI, AMD, and Intel—each entered into an agreement with distributor Mouser. Entities at different levels of a distribution chain generally do not have a community of pecuniary interest. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 527-28 (Tex. 2002). And plaintiffs' conclusory assertion that the common financial stake between TI, AMD, and Intel and Mouser "extended beyond a simple manufacturer-distributor relationship" is insufficient to cure this defect. Am. Compl. (ECF No. 77) ¶ 287.

3

Plaintiffs' aiding and abetting claim fails because the Supreme Court of Texas has not yet expressly adopted this claim. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020) (per curiam) (affirming dismissal of aiding and

-19-

abetting claim because the court "cannot recognize a claim that the Texas Supreme Court has yet to expressly adopt"); *Cleveland State Bank v. JPMorgan Chase Bank*, 2025 WL 296144, at \*3 (S.D. Tex. Jan. 24, 2025) (concluding the same). And the court disagrees with plaintiffs' reading of the Supreme Court of Texas' decision in *Nettles v. GTECH Corp.* *Nettles* did "not expressly recognize a cause of action for aiding and abetting." *Cruden Bay Holdings, LLC v. Jezierski*, 2022 WL 447080, at \*5 (N.D. Tex. Feb. 14, 2022) (Brown, J.) (discussing *Nettles*). At most, *Nettles* appeared to assume, without deciding, the existence of this cause of action. *See Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738-39 (Tex. 2020).[13]

4

Finally, defendants maintain that all claims brought by the Tereschenko, Zaplyvanyi, and Babich plaintiffs should be dismissed as time-barred. The court declines to reach this ground of their motion in view of its disposition of the causation issue above.

V

"Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will give [plaintiffs] an opportunity to amend [their] complaint[s]." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707

---

[13]Recently, in *Fischman v. Epic Systems Corp.*, 2026 WL 1651510, at \*3-4 (N.D. Tex. June 8, 2026) (Fitzwater, J.), the court made an *Erie* guess about whether the Supreme Court of Texas would recognize a duty that could serve as the basis for a negligence claim. "The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The court was not making a prediction about whether the Supreme Court of Texas would recognize the existence of a cause of action for negligence.

(N.D. Tex. 2014) (Fitzwater, C.J.) (citing *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)).  Plaintiffs must file their second amended complaints no later than 28 days after the date this memorandum opinion and order is filed.

\* \* \*

For the reasons explained, the court grants defendants' March 20, 2026 motion to dismiss and also grants plaintiffs leave to replead.  The court grants defendants' March 20, 2026 motion to stay discovery and denies without prejudice plaintiffs' June 26, 2026 motion to compel.

**SO ORDERED**.

July 1, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE